STATE of Alaska,
Appellant/Cross–Appellee,

v.

Paul STAAEL,
Appellee/Cross–Appellant.

Nos. A–3483, A–3492.

Court of Appeals of Alaska.

March 15, 1991.

Michael J. Stark, Asst. Atty. Gen. and Douglas B. Baily, Atty. Gen., Juneau, for appellant/cross-appellee.

Marcia E. Holland, Asst. Public Defender, Fairbanks and John B. Salemi, Public Defender, Anchorage, for appellee/cross-appellant.

Before BRYNER, C.J., COATS, J., and ANDREWS *, District Court Judge.

## OPINION

ANDREWS, District Court Judge.

Paul Staael was convicted of attempted murder in the first degree and sentenced to a ten-year prison term. He was released on mandatory parole after serving his entire term less good time, and was subject to parole conditions. Following his release, Staael violated two of the standard parole conditions, and his parole was revoked. He filed an application for post-conviction relief which the trial court granted, finding that 1) he should have been granted a hearing on the special conditions of parole, 2) that parole was unlawfully revoked, and 3) that Staael did not have a right to refuse mandatory parole. The state now appeals the court's decision, claiming the first two findings were erroneous. Staael cross-appeals, claiming the trial court's third finding was erroneous.

The record reflects that Staael was scheduled to be released on mandatory parole on October 6, 1989, at which time he would have served the entire term of the sentence less good time. AS 33.20.010; AS 33.20.020. Approximately five months prior to his release, Staael was notified that he was subject to mandatory parole and that general, standard and special conditions of parole would be imposed on him.[1]

Staael sent a letter to Russell Moody, the superintendent of the Wildwood Correctional Center where he was held, arguing that the mandatory parole statute did not apply to him, because the statute was passed after his conviction and his incarceration.[2] Based on his understanding of the statute, he argued that if paroled, his release should be unconditional, and in particular he questioned the authority of the Board to impose parole conditions. Although it does not appear that Staael requested a hearing specifically with the Parole Board, on April 19, 1989, Staael did request a meeting with Moody to discuss his complaints and arguments. His request was denied.

Approximately four months prior to his scheduled release, Staael filed a motion for declaratory and injunctive relief in the Kenai Superior Court, claiming that the imposition of parole conditions was unlawful. The state opposed the motion, and moved to dismiss the action on the ground that Staael failed to state a claim for which relief could be granted. The court granted the state's motion to dismiss.

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. For clarity we define probation conditions as:

    A. general—a single condition statutorily mandated by AS 33.16.150(a) requiring the parolee to refrain from conduct punishable by imprisonment.

    B. standard—twelve conditions routinely imposed on all parolees derived from the seventeen statutorily authorized conditions of parole under 33.16.150(b). They are: (1) report to his parole officer the next working day after release; (2) make diligent efforts to maintain steady employment, education, training or treatment; (3) report monthly to his parole officer; (4) obey all laws; (5) obtain permission before changing his residence or staying away from his residence more than 24 hours; (6) obtain permission before traveling out-of-state; (7) not possess a firearm; (8) not possess any drugs not prescribed by a

physician; (9) report any contact with a law enforcement officer; (10) not work as an informant with a law enforcement agency; (11) not associate with convicted felons; and (12) obey special instructions or orders of the board or parole officer.

    C. special—other conditions authorized under AS 33.16.150(b) that are imposed by the board as a matter of discretion on a case by case basis.

2. Apparently the applicable parole statute at the time Staael was sentenced was AS 33.15.180 (repealed effective January 1, 1986), which stated in subsection (c) that: "A state prisoner imprisoned in accordance with AS 12.55.125(c)(1), (c)(2), (c)(3), (d)(1), (d)(2), (e)(1), or (e)(2) who is released under AS 33.20.030 shall be placed on parole for the period specified in the certificate of deduction, subject to written rules and conditions imposed by the board or his parole officer."

Despite his resistance, mandatory parole was approved and Staael was requested to read and sign the single general, twelve standard, and nineteen special parole conditions. Staael refused to sign the document. He stated that he if he were released, he would violate the conditions. He claimed that since the imposition of conditions of release violated his constitutional rights, none of the conditions to be imposed applied to him. According to Staael's version of the facts, he told the correction officials that he would rather stay in prison than be released subject to the conditions of parole. The correction official told Staael he was required to leave the prison, and if he refused, he would be charged with criminal trespass. Staael stated that if he was released subject to conditions, he would not consider himself bound by them, and would fly to California instead of going to Fairbanks as required by the conditions of parole.

Staael was released on mandatory parole on October 6, 1989. He was provided transportation to Fairbanks, where according to his standard parole conditions, he was required to set up a residence at the Northward Hotel and contact a parole officer. He violated these standard conditions, however, failing to report to his parole officer in Fairbanks on October 9, and failing to establish a residence at the hotel. Instead, he went to Sacramento, California, where he was arrested on November 10, 1989, and transported back to Alaska on November 28, 1989. On January 12, 1990, his parole was revoked based on violation of these two standard conditions of parole.

On February 5, 1990, Staael filed an application for post-conviction relief arguing that his parole was unlawfully revoked, that he had a right to refuse parole when he was dissatisfied with the conditions

which were imposed, and that he had a right to elect to serve the remainder of his sentence in prison. He also claimed that he was entitled to a hearing before the Parole Board when conditions of parole were imposed upon him.[3] The state opposed the application for post-conviction relief. On April 20, 1990, Superior Court Judge Jay Hodges set aside the finding of the Parole Board that Staael had violated his parole, and found that Staael was entitled to a meaningful hearing on the parole conditions imposed. The court granted Staael's application for post-conviction relief. The trial court, however, rejected Staael's contention that he could opt to refuse mandatory parole and instead serve out his sentence in prison.

The state now appeals the decision of the trial court in the post-conviction relief application, arguing three points: 1) that the trial court erred in finding that Staael was entitled to a hearing, 2) that even if Staael had a right to be heard on the imposition of special conditions, this right was satisfied by the procedure provided him, and that therefore an in-person hearing was not required, and 3) that the trial court erred in granting Staael's application for post-conviction relief. Staael cross-appeals, contending that the trial court erred in denying his right to refuse release on mandatory parole.

We agree in part with the state's claim that the lower court erred in finding that Staael was entitled to a hearing. It is undisputed that Staael's probation was revoked on the basis that he violated several of the standard conditions of parole. Staael cites no authority to support his claim that he was entitled to a hearing before standard conditions of parole could be imposed.[4] The nineteen special conditions to

3. Prior to his release on parole, Staael questioned the authority of the Board to impose "supplemental mandatory parole conditions." In his petition for post-conviction relief, he broadens his claim to include a right to an in-person hearing on any conditions imposed by the board.

4. Staael argues that *Roman v. State*, 570 P.2d 1235, 1244 (Alaska 1977) requires the Parole

Board to offer Staael a hearing before any condition of parole can be imposed. We think Staael reads *Roman* too broadly. *Roman* involved the imposition of a special condition of parole imposed by the parole officer requiring Roman to waive important fourth amendment protections. The narrow holding of *Roman* requires a hearing, if requested by the parolee, on special conditions of parole which appear to authorize warrantless searches of the parolee.

which he objected were not implicated in the parole revocation proceeding. Staael seems to argue that the imposition of special conditions without a right to an in-person hearing with the Board in some manner vitiated the authority of the Board to mandatorily place him on parole under any conditions. We find his argument wholly without merit.

Despite the state's request, we decline to reach further and address the merits of its claim that parolees are not entitled to a hearing before the Parole Board when special conditions are imposed. Likewise, we decline to address the state's claim that providing Staael with the opportunity to object in writing to the proposed special conditions is sufficient to meet due process demands.

We decline to reach these issues for two reasons: first, they are irrelevant to Staael's claim that his parole was improperly revoked, and, second, at oral argument we were notified of the adoption of Parole Board regulations. We are hopeful that adoption of these regulations will make this particular scenario unlikely to be repeated.

■ We turn to Staael's claim that he had the right to refuse to be released on mandatory parole. He supports his position with the contention that because defendants may refuse probation when they believe the conditions of probation are more onerous than service of the sentence, parolees facing the same risks must have the right to refuse as well. He urges an extension of the law in *Brown v. State*, 559 P.2d 107, 111 n. 14 (Alaska 1977), in support of his position.

In *Brown v. State*, 559 P.2d 107 (Alaska 1977), the defendant was convicted of polygamy, a crime for which the maximum penalty was seven years in prison. The applicable penalty statute did not permit a fine as a punishment. The court suspended the prison sentence and placed Brown on probation for two years, requiring him to pay a $3000 fine. *Id.* at 108.

Brown applied for a reduction of the sentence, arguing that because the penalty for polygamy could not include a fine, he could therefore not be subjected to a probation order which included a fine. The Alaska Supreme Court rejected this argument finding that a sentencing court's statutory power to punish was separate from the court's discretionary power to impose probation conditions. *Id.* at 110. The court explained that trial courts are specifically authorized to impose probation conditions and that there is a need to give trial courts flexibility in fashioning appropriate probation conditions. *Id.* The court concluded that the trial court was empowered to impose a fine as a condition of Brown's probation even though the trial court could not have imposed a fine as the punishment itself. *Id.*

Upholding the probation condition, the supreme court agreed with the decisions of other courts which held a defendant has the right to refuse probation, when " 'its conditions may appear to defendant more onerous than the sentence which might be imposed.' " *Id.* at 111 (quoting *In re Osslo*, 51 Cal.2d 371, 334 P.2d 1, 8 n. 3 (1985) and citing *People v. Frank*, 94 Cal.App.2d 740, 211 P.2d 350, 351 (1949); *People v. Billingsley*, 59 Cal.App.2d Supp. 845, 139 P.2d 362, 364 (1943)).

Staael argues that identical risks exist for the parolee that parole conditions will be more onerous than serving the sentence, and therefore, the *Brown* rule must be extended.

The state's argument that the rule in *Brown* should not extend to the mandatory parole context hinges on a distinction drawn between discretionary parole and mandatory parole. The state suggests that while *Brown* could extend to the discretionary parole context, it should not apply in cases of mandatory release.

We decline to extend *Brown* to mandatory parole cases because the underlying poli-

Staael violated standard conditions of parole which did not implicate the fourth amendment concerns raised in *Roman*. *Roman* cannot be read to require that a parolee have the right to a

hearing on a standard condition of parole which requires him to report to a parole officer or initially maintain an in-state residence.

cies and purposes of probation and parole are significantly different.[5]

The most significant distinction between probation and parole is that the decision to grant probation is discretionary, whereas the decision to impose parole, for the period of credited good time, is mandatory.

The relevant portion of the probation statute, AS 12.55.090, states:

(a) Probation may be granted whether the crime is punishable by fine or imprisonment or both....

(b) The court may revoke or modify any condition of probation, or may change the period of probation.

The court's discretionary powers to grant, modify, and revoke probation are triggered when "the court is satisfied that the ends of justice and the best interest of the public as well as the defendant will be served...." AS 12.55.080. *See also* AS 12.55.085.

Mandatory parole, as its name suggests, is required by statute. Alaska Statute 33.-16.010 states:

Parole. (a) A prisoner who is serving a term or terms of at least 181 days is eligible for either discretionary or mandatory parole.

.    .    .    .    .

(c) A prisoner who is not eligible for discretionary parole, or who is not released on discretionary parole, shall be released on mandatory parole for the term of good time deductions credited under AS 33.20, if the term or terms of imprisonment exceed 180 days.[6]

The fact that probation is by nature discretionary, while non-discretionary parole is mandated, signals the even more fundamental differences in the underlying principles and policies of each.

In offering probation to an offender, a court is allowed to offer the defendant a more lenient alternative to imposition of the statutory penalty. The offer of probation is "an act of grace and clemency." *People v. Franks*, 94 Cal.App.2d 740, 211 P.2d 350, 351 (1949). It "was never intended to be a device for making a punishment more severe than that prescribed by the legislature." *People v. Billingsley*, 59 Cal. App.2d Supp. 845, 139 P.2d 362, 364 (1943). Rather, it is a judicially designed alternative sentence, granted to seemingly deserving defendants, whereby they "may escape the extreme rigors of the penalty by law of the offense of which he stands convicted." *Id.* In Alaska, for example, probation is often offered in situations where the defendant is a youthful first offender. *Wharton v. State*, 590 P.2d 427, 430 (Alaska 1979).

In contrast, the intent of providing parole was not to provide a lesser penalty or grant an alternative to the statutory penalty. The legislature has decided that all prisoners are to serve the last third of their sentences outside the prison, under the strict supervision of the Department of Corrections, as part of the rehabilitative goal. AS 33.20.040.

The Supreme Court set out the policies and purposes of parole in *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972). Noting first that parole functioned as an integral part of the penological process, the Court stated

---

**5.** Probation and parole are similar in that they are both statutorily authorized methods for conditional release of criminal offenders. In both cases the conditions imposed must be reasonably related to achieving the offender's rehabilitation. *Roman*, 570 P.2d at 1240 (parole context) and *Hester v. State*, 777 P.2d 217, 218–219 (Alaska App.1989) (probation context). Furthermore, the Supreme Court has stated that the due process requirements for revocation of probation and parole are constitutionally indistinguishable. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1759 n. 3, 36 L.Ed.2d 656 (1973). Beyond these similarities, however, the

differences between probation and parole are (
prominent and significant.

**6.** The meaning of the statute is clear on its face. The legislature used the words "shall be released on mandatory parole" thus requiring prison officials to release the prisoner. Further, AS 33.-16.010(d) directs that the prisoner be subjected to "the conditions of parole imposed under AS 33.16.150." Alaska Statute 33.16.150(a) requires the board to set the condition that the parolee "shall refrain from conduct punishable by imprisonment," and also empowers the Parole Board to choose among various conditions to set for a particular prisoner. AS 33.16.150(b).

that parole was not an *ad hoc* exercise of clemency. The Court stated in part that

> parole is an established variation on imprisonment of the convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed.

The court added that parole served to alleviate the costs to society of keeping an individual in prison and explained that, "[t]he essence of parole is release from prison, before the completion of the sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* The Court then stated:

> The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules.

*Id.* at 478–479, 92 S.Ct. at 2599.

The parolee is subject to a variation of the sentence imposed, while a probationer has agreed to an alternative punishment. This distinction is critical. It demonstrates that the probationer is given a choice at sentencing, whether to be sentenced or to retain his or her liberty subject to conditions. Inherent in the court's offer of the choice, is the right of the offender to refuse the offered alternative. Thus, it makes good sense that when offered probation, a defendant has the right to refuse it. Without the right to refuse, the choice is meaningless.

The parolee, on the other hand, is not given a choice at all, but rather, gains freedom by statutory mandate. Because the parolee is given no alternative but to serve out the sentence in a manner determined by the legislature, the argument that he or she has a right to refuse the treatment prescribed is nonsensical. Therefore, Staael's claim that the parolee has the same right to refuse parole as the probationer has to refuse probation must be rejected.[7]

Finally, Staael contends that the parolee faces the same risks as the probationer that conditions imposed will be more onerous than serving the sentence. He argues that just as the probationer is safeguarded by the right to refuse, the parolee must be protected with the same right. However, when considering the diverse purposes of probation and parole, the flaw in Staael's argument is clear. To grant probation is to give clemency through offer of a more lenient punishment. For a judge to create a punishment which is more "onerous" than service of the sentence, would therefore, defeat the purpose of probation.

Parole, on the other hand, is merely a variation of treatment during the completion of the sentence. Furthermore, when a defendant goes to prison, he or she relinquishes not only liberty, but many other constitutional protections and rights. *McGinnis v. Stevens*, 543 P.2d 1221 (Alaska 1975); *Green v. Coughlin*, 633 F.Supp. 1166 (S.D.N.Y.1986); *Bowman v. Wilson*, 514 F.Supp. 403 (E.D.Pa.1981), *rev'd on other grounds*, 672 F.2d 1145 (3rd Cir. 1982). When released on parole, while subject to restrictions, the prisoner at least gains back liberty, and in this respect the

---

7. This conclusion is in accord with the view of the federal court's interpretation of the federal mandatory release scheme. *Singleton v. Looney*, 218 F.2d 526, 528 (10th Cir.1955) ("[t]he conditions of release are as mandatory as the right to the release itself based on statutory good-time deductions ... [a]nd the incident of the conditions may not be forestalled by mere dissent of the prisoner); *Hicks v. Reid*, 194 F.2d 327, 329 (D.C.Cir.1952) (the federal mandatory release statute "not only created the right to release but also imposed conditions ... [b]oth of which are mandatory and can not be avoided by dissent"). *See also Weber v. Willingham*, 356 F.2d 933, 934 (10th Cir.1966) (unlike a prisoner released on discretionary parole, "release of a prisoner who has served the full term of his sentence, less statutory good time deductions, is mandatory"); *Donahue v. United States Parole Commission*, 603 F.Supp. 1310, 1312 (S.D.Fla. 1985) ("Congress has fixed the conditions attached to mandatory release and those conditions are not affected by the failure or refusal of the releasee to sign the release agreement"). *Cf. Crenshaw v. Parratt*, 698 F.2d 360 (8th Cir.1983); *In re Schoengarth*, 66 Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200 (1967); *Sheppard v. State ex rel Eyman*, 18 Ariz.App. 108, 500 P.2d 639 (1972) *overruled on other grounds, Thomas v. Arizona State Board of Pardons and Paroles*, 115 Ariz. 128, 564 P.2d 79 (1977).

parolee is always better off than he or she was while incarcerated. Thus, there is no risk that the conditions of parole could be more onerous than serving the sentence incarcerated. The same concerns that motivated the supreme court to adopt the right of refusal in the probation context do not exist in the parole context. Therefore, contrary to Staael's argument, an extension of the safeguards in *Brown* is unnecessary.

In conclusion, we reject Staael's argument that the trial court erred in finding that he had no right to refuse mandatory release from prison. Staael was required to leave the prison. It is uncontested that he violated standard conditions of parole by leaving the state and failing to report. We find he had no right to an in-person hearing before the standard conditions, which he violated, were imposed. Therefore, his parole was properly revoked. Accordingly, we AFFIRM the trial court's finding that Staael had no right to refuse mandatory parole. We REVERSE the trial court's decision that Staael's parole was improperly revoked. The case is REMANDED for proceedings in accordance with this decision.