Raymond E. HILL, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7522.

Court of Appeals of Alaska.

April 27, 2001.

---

12. *See id.* at 272, 273.

13. *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

G. Blair McCune, Deputy Public Defender, Barbara K. Brink, Public Defender, for Appellant.

Raymond E. Hill, Anchorage, in pro. per.

Timothy W. Terrell, Assistant Attorney General, Criminal Division Central Office, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

In 1993, Raymond E. Hill was convicted of robbery and sentenced to serve 7 years in prison. In early 1998, Hill's actual time in prison, combined with the "good time" credit that had been awarded to him under AS 33.20.010, totaled 7 years. Hill was therefore released on mandatory parole. *See* AS 33.20.030–.040(a).

The Parole Board established various conditions to govern Hill's parole, but Hill refused to sign these conditions because he believed that mandatory parole was illegal. (He nevertheless was released on mandatory parole.) A few weeks later, Hill launched the first in a series of court cases in which he contended that a prisoner who is released because of good time credit is entitled to an

unconditional discharge. Hill presents that same argument in this appeal.

Hill raises several constitutional and statutory challenges to mandatory parole. For the reasons explained in this opinion, we conclude that mandatory parole is lawful, that the Parole Board has the authority to set conditions governing the conduct of prisoners released to mandatory parole, and that a parolee who violates those conditions can lawfully be sent back to prison to serve the remainder of their sentence—*i.e.*, the number of days that the parolee was excused from serving earlier because of good time credit.

*Hill's contention that, under the Alaska statutes, good time credit constitutes a complete forgiveness of a portion of a prisoner's sentence*

Under AS 33.20.010, all prisoners are entitled to a good time credit equal to one-third of their sentence if they abide by the rules of their correctional facility. This credit can be forfeited (in whole or part) for misbehavior[1], and forfeited credit can be restored for renewed good behavior[2]. Under AS 33.20.030, when a prisoner's actual time in prison, combined with their good time credit, equals the number of days that the prisoner was sentenced to serve, the prisoner shall be released.

■ However, AS 33.20.040(a) declares that many of the prisoners who are released from prison because of good time credit will remain under the supervision of the Parole Board. Under this statute, prisoners whose composite sentence is 2 years or less are unconditionally discharged. By contrast, prisoners whose composite sentence exceeds 2 years are "released on mandatory parole to the custody and jurisdiction of the parole board under AS 33.16, until the expiration of the maximum term to which the prisoner was sentenced". Thus, for prisoners sentenced to serve more than 2 years, good time credit

does not constitute a complete forgiveness of jail time. Rather, good time credit converts time that would otherwise be spent in prison to time that will be spent on parole.

Hill argues that the rule established in AS 33.20.040(a) contradicts what is said in AS 33.20.010 and AS 33.20.030.

Hill notes that AS 33.20.010 declares that prisoners are "entitled to a *deduction* of one-third *of [their] term of imprisonment*" for good behavior. Hill argues that, once good time credit is deducted from a sentence, those days can not be added back to the sentence. He notes that AS 33.20.030 speaks of a prisoner's "release" because of accumulated good time credit, and he further notes that the title of this section is "Discharge". From these provisions, Hill concludes that the "release" granted by section 030 is a complete discharge from state supervision—an unconditional release.

Hill contends that AS 33.20.040 contradicts these two sections because it allows a prisoner's good time credit days to be added back to the sentence. As explained above, AS 33.20.040 states that prisoners whose composite sentence exceeds 2 years are not released unconditionally; rather, they are released on mandatory parole. If a prisoner released on mandatory parole is later found to have violated the conditions of their parole, the prisoner can be sent back to prison to serve some or all of the days that were previously deducted on account of good.time credit.[3] Hill argues that this result is "hopelessly in conflict" with AS 33.20.010 and 33.20.030.

■ Conceivably, these two sections might be interpreted in the way Hill suggests if they were simply read by themselves. But when the legislature has enacted several statutes that all deal with one related subject matter, this court is obliged to read all of the

---

1. *See* AS 33.20.050.

2. *See* AS 33.20.060.

3. *See* AS 33.16.220(i). This statute reads: "If, after the final revocation hearing, the [parole] board finds that the parolee has violated a condition of parole imposed under AS 33.16.150(a), (b), or (f), or a law or ordinance, the board may revoke all or a portion of the parole, or change any condition of parole."

statutes together and construe them in harmony with each other, if possible.[4]

■ In this case, it is possible to construe the statutes harmoniously. For prisoners who receive a composite term of 2 years or less, good time credit constitutes a true reduction of their sentence. When the combination of their actual time served and their good time credit equals their sentence, they are released unconditionally. But for prisoners who receive a composite term exceeding 2 years, good time credit operates to convert days in jail to days on parole. Good time credit still speeds their release from prison, but these prisoners are released to mandatory parole under the supervision of the Parole Board. The prisoner's good time credit becomes a sort of suspended sentence that can be re-imposed in whole or in part by the Parole Board if the parolee violates the conditions of their release.

*Hill's contention that the Parole Board has no authority to revoke a parolee's good time credit and require the parolee to serve those days in prison*

■ Hill also argues that even if mandatory parole is lawful, the Parole Board has no authority to take away a prisoner's good time credit once this credit has "vested"—that is, once the Department of Corrections has officially recognized the prisoner's good time credit by releasing the prisoner. Hill notes that when a prisoner is released because of good time credit, AS 33.20.030 requires the warden or superintendent of the prison to affix or append a "certificate of deduction" to the prisoner's commitment. (The "commitment" is the document that authorizes the Department of Corrections to hold the prisoner. *See* AS 33.30.051.)

Hill contends that once a prisoner's total good time credit is memorialized in this "certificate of deduction", the Parole Board can not revoke or reduce it. Hill acknowledges that AS 33.20.050 authorizes the forfeiture of a prisoner's good time, but only for an offense committed "during the [prisoner's] term of imprisonment". Thus, Hill concludes, the Parole Board has no authority to revoke a prisoner's good time credit once the prisoner is released.

Again, we have a legal duty to read all of the related statutes together and see if they can reasonably be construed in harmony with each other. The whole concept of mandatory parole makes no sense unless the parolee faces a penalty—return to prison—for violating the conditions of parole. Just as a sentence of probation requires that some portion of the defendant's imprisonment or fine be suspended[5], so parole requires the conditional forgiveness of jail time and the possibility that this jail time might be re-imposed.

It is true, as Hill points out, that AS 33.20.150 only authorizes forfeiture of a prisoner's good time for an offense committed in prison. But that statute deals with the *Department of Corrections'* authority to take away a prisoner's good time credit *before* release. The issue in Hill's case is different: the *Parole Board*'s authority to take away a prisoner's good time credit *after* release— *i.e.*, when the prisoner has become a parolee.

That authority is found in AS 33.16.220(i), a statute dealing with parole revocation. This statute authorizes the Parole Board to "revoke all or a portion of the parole" if the parolee is found to have committed a new offense or to have violated the conditions of parole. As explained in 22 AAC 20.275, this means that the Parole Board is authorized to revoke all or a portion of the parolee's good time credit:

Effect of Revocation of Mandatory Parole. A prisoner whose mandatory parole is revoked is required to serve a term equal to the difference between the date of [the prisoner's] release on mandatory parole and the [prisoner's] maximum release date, unless the board revokes only a portion of parole[.]

4. *See Lake v. Construction Machinery, Inc.*, 787 P.2d 1027, 1030 (Alaska 1990); *Hafling v. Inlandboatmen's Union of the Pacific*, 585 P.2d 870, 872 (Alaska 1978); *Hotel, Motel, Restaurant, Construction Camp Employees & Bartenders Union, Local 879 v. Thomas*, 551 P.2d 942, 944 (Alaska 1976); *Millman v. State*, 841 P.2d 190, 194 (Alaska App.1992).

5. *See Putnam v. State*, 930 P.2d 1290, 1291–92 (Alaska App.1996); *Kelly v. State*, 842 P.2d 612, 613 (Alaska App.1992).

■ The Parole Board's authority to revoke good time credit does not conflict with the Department of Corrections' duty under AS 33.20.030 to issue a "certificate of deduction" when a prisoner is released on mandatory parole. As explained above, this statute requires the warden or superintendent to affix the certificate of deduction to the prisoner's commitment—*i.e.*, to the written document that authorizes (indeed, commands) the Department of Corrections to hold the prisoner for the length of time specified by the sentencing court. Because the commitment commands the Department of Corrections to hold the prisoner, it makes sense for the legislature to require prison officials to make a written amendment to that document when, because of good time credit, the prisoner is released from custody before the prisoner has served the whole term of imprisonment specified in the commitment.

Interpreting the statute in this light, the legislature did not intend for the certificate of deduction to create a "vested interest" in good time credit. Rather, the certificate serves to formally explain or justify why prison officials no longer have custody of the prisoner.

*Hill's contention that the revocation of a parolee's good time credit constitutes an illegal increase in the parolee's sentence*

■ Hill argues that even if our statutes authorize the Parole Board to revoke a parolee's good time credit, and to order the parolee to serve those days in prison, this statutory authority violates the double jeopardy clause of the constitution because the Board's action will inevitably constitute an illegal increase in the prisoner's sentence. According to Hill, the increase occurs because, through its action, the Parole Board subjects a prisoner to state supervision for a longer period than was contemplated by the sentencing court.

Hill's argument is this: When, as in Hill's case, a defendant's sentence is partially suspended, the defendant will serve a term of imprisonment and then will be released on probation. Generally, in such cases, the superior court's judgement will specify that the defendant's probation commences upon the defendant's release from prison and will run for a fixed amount of time. For example, in Hill's case, the superior court's judgement states that Hill's probation "expires 2 years after [Hill's] release from incarceration."

■ As explained above, Hill was released from incarceration (on mandatory parole) in early 1998. Under AS 33.20.040(c), a prisoner's probation runs concurrently with their mandatory parole. Thus, if Hill had successfully completed his parole, he would also have successfully served his probation, and he would have been unconditionally discharged from state supervision sometime in 2000. But Hill's parole was revoked; he was sent back to prison to serve out the days for which he earlier received good time credit. As it stands now, Hill will not be unconditionally released from state supervision until sometime in 2002.

Hill contends that this constitutes an illegal increase in his sentence. He also contends that the only way to cure this illegality (assuming that the Parole Board has the authority to revoke his mandatory parole in the first place) is to give him credit against his sentence for the time he spent on parole, so that his total time under state supervision remains unchanged.

With regard to Hill's argument that he must be given credit against his sentence for the time he spent on parole, we have already rejected this argument in *State v. Merry*.[6] Like Hill, the defendant in *Merry* contended that unless he received credit for time spent on parole, the Parole Board's action of sending him back to serve all of his remaining time (*i.e.*, all the days that he would have spent in prison but for his good time credit) effectively constituted an increase in his sentence, in violation of the double jeopardy clause. We rejected this argument. We noted that in the analogous situation of probation revocation, a sentencing court does not violate the double jeopardy clause when it sends a defendant back to prison to serve a previously suspended term of imprisonment because "the defendant is on notice [from the

outset] of [the] statutory provisions which restrict his liberty if his probation is revoked lawfully." [7] Thus, a probationer is not entitled to credit against their sentence for the time spent on probation before it was revoked.[8] Likewise, we concluded, a parolee is not entitled to credit against their sentence for the time spent on parole.[9]

The reason why parole revocation does not violate the guarantee against double jeopardy (even if it extends the parolee's total time under state supervision) was explained more fully in *Reyes v. State*.[10] In *Reyes*, we addressed the same problem in the context of probation revocation. We explained:

> AS 12.55.090(b) declares that the sentencing court "may revoke or modify any condition of probation, or may change the period of probation". It practically goes without saying—although the United States Supreme Court expressly said it in *United States v. DiFrancesco* [449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980)]—that the double jeopardy clause is not violated when a sentencing court revokes a defendant's probation and imposes a previously-suspended prison term. In such circumstances, the defendant's sentence has not been "increased" because, from the beginning, it was understood that the defendant's imprisonment would remain suspended only if the defendant abided by the conditions of probation.

> *DiFrancesco* held that, for purposes of the federal double jeopardy clause, a criminal sentence does not have the same "finality" as a verdict of acquittal. [*See id.*, 449 U.S. at 137, 101 S.Ct. at 438.] Thus, while verdicts of acquittal are virtually immune from judicial re-examination, legislatures may grant courts significant power to re-examine criminal sentences—and modify

them to the defendant's detriment—without defeating the defendant's "legitimate expectations" of finality. Since the *DiFrancesco* decision, most courts have held (either explicitly or implicitly) that when a defendant challenges a modification of their sentence on double jeopardy grounds, the double jeopardy issue must be resolved by examining the applicable sentencing statutes and deciding whether, from the beginning, the court was authorized to modify the sentence in that way.

*Reyes*, 978 P.2d at 639 (some footnotes omitted, some placed in brackets).

Revocation of Hill's parole may result in his having to spend more total time under state supervision, but this possibility is inherent in any criminal sentence that exceeds 2 years to serve—by virtue of the statutes that create mandatory parole and that authorize the Parole Board to revoke it. Under our decision in *Reyes* and the United States Supreme Court's decision in *United States v. DiFrancesco*[11], this statutory framework does not violate the double jeopardy clause.

■ For similar reasons, we reject Hill's contention that his continued imprisonment violates the Thirteenth Amendment to the United States Constitution.

*Hill's contention that the Parole Board has no authority to place conditions on his mandatory parole, and no authority to revoke his parole for violation of these conditions*

Relying on Justice Boochever's opinion in *Morton v. Hammond*[12], Hill argues that the Parole Board has no authority to place conditions on mandatory parole release-and thus no authority to revoke parole if a parolee fails to abide by these conditions. Hill ac-

---

7.  *Id.* at 256 n. 2.

8.  *See Paul v. State*, 560 P.2d 754, 758 (Alaska 1977). *See also Gage v. State*, 702 P.2d 646, 647–48 (Alaska App.1985) (holding that when a petition to revoke a defendant's probation is filed, and the sentencing court subsequently finds that defendant committed the alleged violation of probation, the defendant is not entitled "to claim credit for time served on probation during the period between the filing of the petition and its ultimate adjudication").

9.  *Merry*, 784 P.2d at 256.

10.  978 P.2d 635 (Alaska App.1999).

11.  *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

12.  604 P.2d 1 (Alaska 1979).

knowledges that Justice Boochever's analysis of the parole statutes did not command a majority of the court in *Morton,* and he further acknowledges that this court explicitly rejected Justice Boochever's statutory analysis in *Braham v. Beirne.*[13] Nevertheless, Hill contends that Justice Boochever was right and that our decision in *Braham* was wrongly decided.

This argument is moot. The issue that divided the supreme court in *Morton* was whether the Parole Board had the authority to place special conditions on prisoners who were released on mandatory parole (and thus the authority to revoke a prisoner's parole for failure to abide by these special conditions). It was on this issue—the Parole Board's authority to place special conditions on mandatory parole—that Justice Boochever declared the parole statutes to be "hopelessly in conflict". He nevertheless voted to affirm the revocation of Morton's parole because he concluded that, even if the Parole Board had no authority to impose special conditions, the parole statutes clearly authorized the Board to revoke a person's parole if that person committed a criminal offense while on parole release. These are the concluding words of his opinion:

> Since it appears from the sketchy record presented to us that Morton's [mandatory] parole status was revoked because of [his] violation of state laws, we conclude that [the] revocation was not prohibited by AS 33.15.190.
>
> The judgment of the superior court is AFFIRMED.

*Morton,* 604 P.2d at 4.

Hill has likewise presented us with only a "sketchy record". However, it appears from that record that Hill's parole was revoked because he committed one or more new criminal offenses. Thus, even under Justice Boochever's analysis of the mandatory parole statutes, the Parole Board had the authority to revoke Hill's parole.

We recognize that the parole statutes have been amended since the supreme court's decision in *Morton.* However, AS 33.16.150(a)(1) continues to require all "pris-oner[s] released on . . . mandatory parole [to] obey all state, federal, or local laws and ordinances, and any court orders applicable to the parolee". It therefore follows that Hill's attack on our decision in *Braham v. Beirne* is moot.

■ In the alternative, assuming that Hill's parole was revoked for violation of special conditions imposed by the Parole Board, we reaffirm our decision in *Braham v. Beirne* that the Parole Board has the authority to impose special conditions on prisoners who are released on mandatory parole, and that the Parole Board has the authority to revoke a person's parole for violation of these conditions.

The current version of AS 33.20.040(a) declares that a prisoner released on mandatory parole remains "[in] the custody and jurisdiction of the parole board under AS 33.16". One of the provisions of Title 33, chapter 16—AS 33.16.060(a)(3)—authorizes the Parole Board to "impose parole conditions on all prisoners released under discretionary or mandatory parole". Another provision of chapter 16—AS 33.16.150(a)—lists a series of "standard" conditions that apply to all parolees. Yet another provision of chapter 16–AS 33.16.150(b)—authorizes the Parole Board to impose one or more additional parole conditions from among the list specified in that statute.

(The Parole Board's powers in this area are reiterated in the Administrative Code. Under 22 AAC 20.270(a), the Parole Board is obliged to set conditions for all prisoners released to mandatory parole, and the provisions of 22 AAC 20.195–225 are expressly made applicable to mandatory parolees. Among those provisions are 22 AAC 20.200 ("Standard Conditions of Parole") and 22 AAC 20.205 ("Supplemental Condition[s] of Parole").)

We therefore reject Hill's contention that the parole statutes are "hopelessly in conflict" on this issue, and we reaffirm our decision in *Braham* that the Parole Board may place—and enforce—conditions on mandatory parole.

**13.** 675 P.2d 1297 (Alaska App.1984).

## Conclusion

For the reasons explained here, we conclude that mandatory parole is lawful, that the Parole Board has the authority to set conditions governing the conduct of prisoners released to mandatory parole, and that a parolee who violates those conditions can lawfully be sent back to prison to serve the remainder of their sentence—*i.e.*, the number of days that the parolee was earlier excused from serving because of good time credit. Accordingly, the judgement of the superior court is AFFIRMED.