**STATE of Alaska, Appellant,**

v.

**Thomas Charles COMBS, Appellee.**

**No. A–8115.**

Court of Appeals of Alaska.

Feb. 14, 2003.

John K. Bodick, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Susan M. Carney, Assistant Public Advocate, Fairbanks, and Brant G. McGee, Public Advocate, Anchorage, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Thomas Charles Combs pleaded no contest to attempted first-degree assault, and he was sentenced to a term of imprisonment. After his sentencing, Combs asked the superior court to issue a supplemental order barring the Department of Corrections from housing Combs in the same facility as Edwin Kent, another convicted prisoner who had assaulted Combs (by shooting him in the back) in 1996. The prosecuting attorney—an assistant district attorney, an employee of the Department of Law—told the court that the State did not object to the proposed order. The superior court then granted Combs's motion, amending the criminal judgement by adding a provision that bars the Department of Corrections from housing Combs and Kent in the same correctional facility.

Approximately five weeks later, another office within the Department of Law (the Central Office of the Criminal Division) challenged this portion of the judgement on behalf of the Department of Corrections. Relying on AS 33.30.061(a) [1] and *Rust v. State*[2],

---

1. "The commissioner [of corrections] shall designate the correctional facility to which is a prisoner is to be committed to serve a term of imprisonment...."

2. 582 P.2d 134, 137–38 (Alaska 1978) (holding

the Central Office argued that the superior court had no authority to restrict the discretion of the Department of Corrections concerning where (and with whom) Combs would be imprisoned.

The superior court declined to delete the challenged provision from the judgement, and this appeal followed.

■ We agree with the State that the sentencing court had no authority to order the Department of Corrections to hold Combs and Kent in separate facilities. In *Rust*, our supreme court said:

> We think it clear that the matter of a prisoner's classification, which encompasses designation of the prison facility to which the prisoner is to be confined, is committed to the administrative discretion of the [Department] of Corrections, and not to the sentencing courts of Alaska. We thus hold that the sentencing court does not have the authority to designate a particular prison facility in which a prisoner is to be confined.

582 P.2d at 137–38. In an accompanying footnote, the supreme court added:

> This conclusion reflects the principles which govern the powers of Alaska's judiciary in relation to those of the executive. In *Public Defender Agency v. Superior Ct., Third Judicial District*, 534 P.2d 947, 950 (Alaska 1975), we articulated these principles in the following manner:
>
> > When an act is committed to executive discretion, the exercise of that discretion within constitutional bounds is not subject to the control or review of the courts. To interfere with that discretion would be a violation of the doctrine of separation of powers.

*Id.* at 138 n. 11.

Combs argues that, because the superior court did not direct the Department of Corrections to hold Combs in a "particular prison facility", the superior court's order does not violate *Rust*. But this interpretation of *Rust* is too narrow. As can be seen from the excerpt quoted above, *Rust* stands for the

broader proposition that a sentencing court can not interfere in any aspect of a prisoner's classification.

Although prisoner classification "encompasses [the] designation of the prison facility to which the prisoner is to be confined", this is but one aspect of the Department's classification authority. The Department's authority includes other matters as well. See, for instance, *LaBarbera v. State*, 598 P.2d 947 (Alaska 1979), where the supreme court held that a sentencing court infringed the authority of the Department of Corrections when the court ordered the Department to release a prisoner to a particular residential rehabilitative program. The supreme court stated that a sentencing court "has [no] authority to designate … a particular program for [a defendant's] rehabilitation." [3] And see *State v. Hiser*, 924 P.2d 1024 (Alaska App.1996), where this Court held that a sentencing court could not order the Department of Corrections to provide particular medical care to a defendant.

We thus conclude that the Department of Corrections has the sole discretion to decide whether Combs needs to be housed separately from another identified inmate. The superior court exceeded its authority when it ordered the Department to house Combs and Kent in separate correctional facilities.

■ The remaining question is whether the Department of Corrections had the right to seek correction of Combs's judgement.

As explained above, when Combs asked the superior court to direct the Department to house him apart from Kent, the prosecuting attorney announced that the State had no opposition to Combs's request. Combs argues that, under the principle of collateral estoppel, the Department of Corrections is now bound by the prosecuting attorney's decision.

Initially, we are unsure whether Combs can invoke the doctrine of collateral estoppel to stop the Department of Corrections from attacking the challenged provision of the

---

that "[a] sentencing court does not have the authority to designate a particular prison facility in which a prisoner is to be confined").

3. *LaBarbera*, 598 P.2d at 949.

judgement. We have just ruled that the superior court (in its role as a sentencing court) had no authority—in other words, no "subject-matter jurisdiction"—to order the Department of Corrections to hold Combs and Kent in separate correctional facilities. Because the superior court exceeded its authority when it issued this provision of the judgement, this provision of the judgement was "void" for purposes of Alaska Civil Rule 60(b)(4), and the Department of Corrections could seek relief from the judgement under that rule. (We discussed this principle at some length in *State v. Superior Court,* 40 P.3d 1239, 1241–43 (Alaska App.2002)).

Neither party to the present appeal has discussed the question of whether the doctrines of res judicata or collateral estoppel prevent a litigant from attacking a void judgement under Civil Rule 60(b)(4). Although we note this legal issue, we need not resolve it because, as we explain next, we conclude that the Department of Corrections is not collaterally estopped by the Department of Law's failure to oppose the challenged provision of the judgement.

■ A party claiming the benefit of collateral estoppel must establish three elements: (1) that the issue decided in prior litigation was precisely the same as the issue currently litigated; (2) that the prior litigation resulted in a final judgement deciding the merits of this issue; and (3) that the parties to the current litigation are either the same as the parties to the prior litigation or are in privity with those prior parties.[4] Here, the dispute centers on the third element. Combs asserts that the Department of Corrections must be deemed in "privity" with the Fairbanks district attorney's office (a branch of the Department of Law), since both agencies are arms of the state government, both are charged with administration of components of the criminal justice system, and both are represented by attorneys employed by the Department of Law.

■ The Alaska Supreme Court has noted that the term "privity" (as used in the context of the collateral estoppel doctrine) has no firm definition. Rather, "it is a shorthand way of expressing assurance that the non-party has had adequate notice and opportunity to be heard, and that its rights and interests have been protected."[5] Generally speaking, officials of the same government are in privity with each other.[6] However, each case must be examined on its own facts. The crucial question is whether, in the earlier litigation, the government's representative had the authority to represent the government's interests in a final adjudication of the issue in controversy.[7]

For example, in *Briggs v. Dept. of Public Safety,* 732 P.2d 1078 (Alaska 1987), the supreme court held that, in an administrative license revocation proceeding, the Department of Public Safety was collaterally estopped from relitigating the issue of whether law enforcement officers had taken adequate steps to preserve an arrested motorist's breath sample. The Department of Law had already litigated (and lost) that same issue during suppression proceedings in a related criminal prosecution. The supreme court held that the Department of Public Safety was in privity with the Department of Law because the Department of Public Safety's interests were adequately represented by the district attorney's office that defended the suppression motion.[8]

On the other hand, in *Holmberg v. Division of Risk Management*[9], the supreme court ruled that the State Division of Risk Management was not in privity with the State Division of Retirement and Benefits.

**4.** *Briggs v. Dept. of Public Safety,* 732 P.2d 1078, 1081 (Alaska 1987).

**5.** *Holmberg v. Division of Risk Management,* 796 P.2d 823, 827 (Alaska 1990), *quoting Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.,* 768 P.2d 117, 121 (Alaska 1989).

**6.** *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402–03, 60 S.Ct. 907, 916–17, 84 L.Ed. 1263 (1940); *Holmberg,* 796 P.2d at 825.

**7.** *Holmberg,* 796 P.2d at 825, *quoting Adkins,* 310 U.S. at 403, 60 S.Ct. at 917.

**8.** *Briggs,* 732 P.2d at 1082–83.

**9.** 796 P.2d 823 (Alaska 1990).

This case arose when Holmberg, a former employee of the Division of Risk Management, applied to the Workers' Compensation Board for occupational disability benefits. The Division of Risk Management disputed her claim, and the Workers' Compensation Board ruled in Risk Management's favor on Holmberg's claim for permanent total disability benefits. Holmberg then appealed to the superior court.

While Holmberg's appeal was pending, the Public Employee's Retirement Board (in a separate administrative proceeding) awarded Holmberg occupational disability benefits based on its determination that Holmberg was, in fact, permanently and totally disabled as a result of injuries she sustained at work. After the Retirement Board issued this ruling, Holmberg apprised the superior court of the Retirement Board's action, and she raised a claim of collateral estoppel. That is, Holmberg argued that the Division of Risk Management was now precluded from contesting her permanent occupational disability because another arm of state government (the Retirement Board) had decided this issue in her favor. After the superior court rejected Holmberg's collateral estoppel claim, she appealed to the supreme court.[10]

The supreme court concluded that the Workers' Compensation Board was not bound by the Retirement Board's decision because the two divisions of state government involved in the litigation—the Division of Risk Management and the Division of Retirement and Benefits—were not in privity. The court explained that, in the proceedings before the Retirement Board, the Division of Retirement and Benefits had not appeared as an adversary or an advocate representing the State against Holmberg, but rather as the arm of state government charged with administering the Public Employees Retirement System.[11]

In Combs's case, the asserted privity between the Department of Law and the Department of Corrections presents a close question. Both departments are agencies of the State of Alaska, and they each concern themselves with the functioning of the crimi-

nal justice system. Moreover, when the Department of Corrections (or any other agency of state government) goes to court, these agencies are typically represented by an attorney employed by (or hired through) the Department of Law.

However, the Department of Law's role as prosecutor (through the various district attorney's offices around the state) differs from its role as legal representative of the various agencies of state government. It is not difficult to imagine circumstances in which the interests of the Department of Law would differ from the interests of the Department of Corrections. Indeed, these differences are occasionally aired at sentencing hearings, when the prosecutor (a Department of Law employee) recommends a different sentence from the one recommended by the probation officer who authored the pre-sentence report (a Department of Corrections employee). For instance, the prosecutor might feel that it was important to place a defendant on probation following a term of imprisonment, while the Department of Corrections might take the position that the defendant was unamenable to supervision and should receive "flat time" (*i.e.,* a sentence that does not include suspended time and probation).

Combs's case involves an infringement by the superior court on the Department of Corrections' statutory authority and prerogatives regarding the custody of sentenced prisoners. This infringement took the form of a supplemental directive inserted into Combs's judgement after sentence was imposed. This directive did not alter the terms of Combs's sentence, but only affected the Department of Corrections' administrative authority over Combs as a prisoner.

The prosecutors of the Department of Law's criminal division frequently interact with agents of the Department of Corrections—both Corrections employees and the lawyers employed by the Department of Law to represent the civil interests of the Department of Corrections. But the primary duties of prosecutors are screening potential criminal cases, litigating criminal charges, and

10.  *Id.* at 828.

11.  *Id.* at 828–29.

representing the interests of the State and the victim at sentencing. Prosecutors do not generally appear in court to advocate the administrative concerns of the Department of Corrections. In fact, as pointed out above, a prosecutor may advocate a position that runs counter to the Department of Corrections' administrative concerns.

Here, the issue involves the Department of Corrections' legal rights and authority as the custodian of imprisoned criminals *vis-à-vis* the authority of the superior court in its role as the agency of state government that imposes sentence on convicted criminals. In this type of case, the assertion of the Department of Corrections' rights is primarily a civil concern—not a concern that would inevitably be handled (or even considered) by the prosecutor assigned to the underlying criminal case.

As noted above, the supplemental directive issued by the superior court in this case does not alter the terms of Combs's sentence. Instead, it restricts the places in which the Department of Corrections may house Combs to carry out that sentence. As the State notes in its brief, the superior court's directive apparently forbids the Department from even temporarily housing Combs and Kent within the same facility for purposes of medical care or transportation to a court appearance. It forbids the Department from pursuing alternative strategies to protect Combs's physical safety—strategies such as placing Combs in a separate housing unit within the same correctional facility or using other methods of segregation.

These concerns were not aired in court. Combs's request was served on the prosecutor, not on a representative of the Department of Corrections, and the prosecutor filed a non-opposition to Combs's request. That is, the prosecutor failed to question the sentencing court's authority to restrict the Department of Corrections' actions. We therefore conclude that Combs's case is not like the situation presented in *Briggs*.

In *Briggs*, the supreme court found that the Department of Public Safety and the district attorney's office shared an identical interest in winning the breath sample preservation issue, and that the prosecutor's motive to advocate this interest at the suppression hearing was precisely the same as the Department of Public Safety's motive to advocate that same interest at the license revocation proceeding. Based on these findings, the court ruled that the Department of Public Safety was in "privity" with the Department of Law—a shorthand way of saying that the Department of Public Safety was estopped from relitigating the breath sample preservation issue. But in Combs's case, the prosecutor's office failed to advocate—and had no particular motive to advocate—the Department of Corrections' statutory rights and administrative concerns.

A footnote in the *Briggs* opinion shows that the supreme court was mindful that the interests of the prosecutor's office might diverge from the interests of other criminal justice agencies, thus defeating a finding of privity:

> [The situation in the present case] is distinguishable from situations where the differing interests of the prosecutor and the administrative agency might justify a refusal to apply collateral estoppel.... [Depending on the circumstances, a] prosecutor's decision to dismiss or to stipulate might reflect interests not shared by the administrative agency and thus should not be used against the agency, which was not entitled to appear at the criminal proceeding.

*Briggs*, 732 P.2d at 1083 n. 9.

We conclude that Combs's case presents the type of situation discussed in this footnote—a situation in which the Department of Corrections should not be deemed to be in privity with the prosecutor's office. Accordingly, we hold that the prosecutor's failure to oppose Combs's request did not estop the Department of Corrections from asking the superior court to correct its illegal order.

The decision of the superior court is REVERSED. The superior court is directed to amend Combs's judgement by striking the provision that forbids the Department of Corrections from housing Combs and Kent in the same correctional facility.