STATE of Alaska, Appellant,

v.

Eugene J. BOURDON Jr., Appellee.

No. A–9950.

Court of Appeals of Alaska.

Oct. 16, 2008.

---

Marilyn J. Kamm, Assistant Attorney General, Criminal Division Central Office, and Talis J. Colberg, Attorney General, Juneau, for the Appellant.

Daniel Lowery, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## *OPINION*

COATS, Chief Judge.

Eugene J. Bourdon was convicted of four counts of sexual abuse of a minor in the second degree.[1] After serving a period of incarceration, he was released on parole. Later, when the Parole Board learned that Bourdon had probably violated his parole, the Board issued a warrant for his arrest. After Bourdon was arrested, he was placed at Glacier Manor, a halfway house in Juneau run by Gastineau Human Services. The Department of Corrections contracts with Gastineau Human Services to house inmates there. Bourdon stayed at Glacier Manor for 248 days, until the Parole Board revoked his parole. The Department of Corrections then transferred him to Lemon Creek Correctional Center.

Under Alaska law a prisoner "is entitled to a deduction of one-third of the term of imprisonment ... if the prisoner follows the rules of the correctional facility in which the prisoner is confined."[2] This deduction for good behavior is called "good time."[3] Bourdon contends that he was eligible for 83 days of good time credit for the time he spent at Glacier Manor. The Department of Corrections refused to award Bourdon good time on the ground that the good time statute only authorized the award of good time for imprisonment in a state-run institution. Relying on

*Valencia v. State,*[4] the Department contended that because Glacier Manor was not a state-run institution, Bourdon was not entitled to good time credit for the time he served in that institution.

Bourdon challenged the Department's ruling by filing an application for post-conviction relief. Superior Court Judge Larry C. Zervos held that Bourdon was entitled to good time credit for the time he served in Glacier Manor. The State appeals. We affirm.

*Why we uphold Judge Zervos's decision*

The State first argues that Bourdon's application for post-conviction relief was deficient because he failed to submit an affidavit in support of his factual contentions. But, as Judge Zervos recognized, the parties do not dispute the facts in this case. Bourdon's application raises a question of law: whether Bourdon was entitled to good time credit for the time he was incarcerated at Glacier Manor. Bourdon's application clearly presented this issue, and the State had every opportunity to contest Bourdon's claim and present its case to Judge Zervos.

The State next argues that Bourdon is not entitled to good time credit for the time he spent in Glacier Manor. As we have previously pointed out, under Alaska law a prisoner "is entitled to a deduction of one-third of the term of imprisonment ... if the prisoner follows the rules of the correctional facility in which the prisoner is confined."[5] Correctional facility is defined as "a prison, jail, camp, farm, half-way house, group home, or other placement designated by the commissioner for the custody, care, and discipline of prisoners."[6] In contrast, a "state correctional facility" is defined separately as "a correctional facility owned or run by the state."[7] The Commissioner has the duty to "designate the correctional facility to which a pris-

1. *Bourdon v. State,* Alaska App. Memorandum Opinion and Judgment No. 4644 (Dec. 11, 2002), 2002 WL 31761482.

2. AS 33.20.010(a). Bourdon was convicted under Former AS 33.20.010(a) (1995). However, the pertinent parts of this statute are the same in the current version.

3. AS 33.20.010.

4. 91 P.3d 983 (Alaska App.2004).

5. AS 33.20.010(a).

6. AS 33.30.901(4).

7. *Id.*

oner is ... committed" and may do so "without regard to whether it is maintained by the state." [8] The definition of "correctional facility" therefore appears to include any placement designated by the Commissioner to house prisoners.[9] It is not limited to state-run facilities.

Indeed, it would appear to be unfair to allow the Department of Corrections to send a prisoner to a facility where he would not receive good time. A prisoner sent by the Department of Corrections to a private prison, because he would not receive good time, would serve a longer sentence than the prisoner the Department sent to a state-run institution.

The State relies on *Valencia v. State*[10] in support of its position that Judge Zervos erred in awarding Bourdon good time credit for the time that he served in Glacier Manor. In *Valencia* we held that the defendant was not entitled to good time credit for the time he spent in a court-ordered residential treatment program as a special condition of probation, although he was entitled to *Nygren* credit for that time when his probation was revoked.[11] We held that Alaska's good time statute applied "only to prisoners who are serving sentences in correctional facilities." [12] Judge Zervos correctly recognized that our decision in *Valencia* applies only to defendants serving time as probationers in a court-ordered residential treatment program. It does not apply to prisoners, such as Bourdon, who were placed by the authority of the Department of Corrections in a correctional facility.

The State contends that the key factor in determining whether Bourdon was entitled to good time credit is whether the Department of Corrections would forfeit his good time credit or transfer him to a state-run facility if he violated the rules at Glacier Manor. This argument is without merit because prisoners are *entitled* to good time credit under AS 33.20.010(a) if they "follow[ ] the rules of the correctional facility" in which they are confined. The Department of Corrections does not have the discretion to withhold good time credit from a prisoner under AS 33.20.010(a) unless he violates the rules of the correctional facility where he is confined. Bourdon did not violate the rules of Glacier Manor. He is entitled to good time credit.

The judgment of the superior court is AFFIRMED.

MANNHEIMER, Judge, concurring.

MANNHEIMER, Judge, concurring.

I write separately to further explain why I conclude that the State's arguments in this appeal have no merit.

The State's first argument is that Bourdon's petition for post-conviction relief was legally deficient—that the petition failed to comply with Alaska Criminal Rule 35.1(d) because Bourdon did not submit an affidavit that "set out separately" all of the "[f]acts within [his] personal knowledge".

But as Judge Zervos correctly observed, Bourdon's claim for relief did not rest on facts "within [his] personal knowledge" in the sense that there were facts known to Bourdon that might not otherwise be known to the State. Instead, Bourdon's claim for relief was based entirely on facts that were already known to the State and were not in dispute: the fact that Bourdon was arrested for violating his parole, the fact that the Parole Board ordered Bourdon confined at Glacier Manor pending the Board's revocation hearing, the dates of Bourdon's confinement at Glacier Manor, and the official correspondence and pleadings exchanged between Bourdon and officials of the Department of Corrections as he tried to convince them that

---

8.  AS 33.30.061(a).

9.  *See City of Kotzebue v. Dep't of Corr.,* 166 P.3d 37, 43 n. 28 (Alaska 2007) (noting that when the Commissioner contracts with a facility to provide custody for Alaska prisoners he "necessarily designate[s] it as a 'correctional facility' under AS 33.30.901(4)").

10.  91 P.3d 983 (Alaska App.2004).

11.  *Id.; see also Nygren v. State,* 658 P.2d 141, 146 (Alaska App.1983) (holding that a defendant is entitled to credit for time served in a program that subjects him to "restrictions approximating those experienced by one who is incarcerated").

12.  *Valencia,* 91 P.3d at 984.

he should be awarded good time credit for the time he spent at Glacier Manor.

In its briefs to this Court, the State argues that Bourdon knew other relevant facts, and that he was obliged to file an affidavit containing these facts. But the facts to which the State refers are not covered by Rule 35.1(d).

According to the State, Bourdon should have filed an affidavit stating (1) that Glacier Manor has its own rules for inmates, rules that differ in various ways from the rules that govern inmate behavior at Lemon Creek (the Juneau prison run by the Department of Corrections); and (2) that Bourdon would have been transferred to Lemon Creek if he had violated Glacier Manor's house rules.

These facts were not within Bourdon's sole knowledge, nor could it even be said that they might not be known to the State. It appears that these facts were known equally well to both Bourdon and the State.

Furthermore, it was the *State* who wished to rely on these facts—because the State believed that these facts advanced its argument that Bourdon was not entitled to good time credit for his time at Glacier Manor.

Although Criminal Rule 35.1(d) requires defendants to explain and support the factual bases for their claims, Rule 35.1(d) does not require defendants to submit affidavits containing all other facts within their knowledge that might conceivably defeat their claims. This is especially true in the present case—where, under Bourdon's view of the law, and under the superior court's view of the law, and (as I am about to explain) under this Court's view of the law, the omitted facts that the State complains about are irrelevant to Bourdon's claim.

For these reasons, Judge Zervos correctly rejected the State's interpretation of Rule 35.1(d) and the State's accompanying contention that Bourdon's petition failed to satisfy that rule.

I also note that the only prejudice which the State claims to have suffered is that Judge Zervos held an "evidentiary hearing" to allow Bourdon to supplement and refine his claims. The State's argument is flawed because no evidentiary hearing was held in this case. Judge Zervos held an oral argument where the attorneys explained and clarified their legal positions, but no testimony or other evidence was presented at this hearing. Instead, Judge Zervos's decision to grant Bourdon's petition was based on the facts recited in the documents filed by the parties—and, as I have already noted, those underlying facts were not in dispute.

The State's second argument on appeal is an attack on Judge Zervos's ultimate ruling in this case—the legal conclusion that Bourdon is entitled to good time credit for the days he was confined at Glacier Manor.

The State contends that prisoners are entitled to good time credit only if they are serving their sentence in a correctional facility operated by the Department of Corrections—and, thus, Bourdon is not entitled to good time credit for the time he spent in Glacier Manor, a halfway house operated by Gastineau Human Services.

The State's position is completely at odds with the governing statutes. Moreover, as revealed by the State's attorney's remarks to Judge Zervos at the oral argument in the superior court, the State's position is internally inconsistent.

The Alaska statute governing good time credit, AS 33.20.010, declares that every defendant convicted of an offense under state law is entitled to a credit against their term of imprisonment equaling one day for every three days that they "follow[ ] the rules of the *correctional facility* in which [they are] confined". (Emphasis added)

The term "correctional facility", as well as the shorthand term "facility", are defined in AS 33.30.901(4) as meaning "[any] prison, jail, camp, farm, half-way house, group home, or [any] other placement designated by the commissioner for the custody, care, and discipline of prisoners".

In contrast, AS 33.30.901(4) contains a separate, more limited definition of the term "state correctional facility". This term means "a correctional facility owned or run by the state". In other words, "state correctional facilities" are a subset of the larger category, "correctional facilities".

Indeed, under AS 33.30.061, when the commissioner exercises the authority (and fulfills the duty) to designate a facility for each prisoner committed to the department's care, the commissioner can make this designation "without regard to whether [the facility] is maintained by the state".

At the oral argument in the superior court, the State's attorney acknowledged that the Department of Corrections places inmates in Glacier Manor. Thus, even though Glacier Manor is not run by the state, it is still a "correctional facility" under the definition codified in AS 33.30.901(4).

After Bourdon's parole was revoked and he was returned to the custody of the commissioner, the commissioner could have designated Glacier Manor as the correctional facility in which Bourdon would be housed. And, at the oral argument in the superior court, the State's attorney conceded that Bourdon *would* be entitled to good time credit if this happened—even though Glacier Manor is not run by the State.

Moreover, AS 33.30.031 expressly authorizes the commissioner to enter into contracts with other governments and with private agencies to provide "correctional facilities" for prisoners within the commissioner's custody—such as the prisons in Arizona that house many Alaska offenders. These correctional facilities are not run by the State of Alaska. Seemingly then, under the State's view of the law, prisoners housed in those Arizona facilities would not be entitled to good time credit. But at the oral argument in the superior court, the State's attorney conceded that those prisoners properly *do* receive good time credit.

Despite the State's attorney's concessions at the oral argument in the superior court, the State continues to assert that Bourdon is not entitled to good time credit for the time he spent at Glacier Manor. In support of this proposition, the State relies on this Court's decision in *Valencia v. State*, 91 P.3d 983 (Alaska App.2004). According to the

State, *Valencia* holds that prisoners confined to halfway houses and other residential treatment facilities are not entitled to good time credit.

The State is wrong. Both *Valencia* and the prior decision that it relies on, *Parker v. State*, 714 P.2d 802 (Alaska App.1986), involved defendants who were ordered into residential treatment as a special condition of their probation. In other words, these defendants were not serving prison sentences.

I acknowledge that the text of our decision in *Valencia* may not expressly state that Valencia was on probation when he was confined to the residential treatment program. However, this fact can be easily inferred from the text of the decision. Our opinion in *Valencia* repeatedly refers to Valencia's "court-ordered" placement at a residential treatment facility, and to the fact that the issue of good time credit arose "[after] the superior court revoked ... Valencia's probation". 91 P.3d at 983. Under Alaska law, a court has no authority to sentence a defendant to prison and then direct the Department of Corrections to place the defendant in a particular facility or program. A sentencing court can specify a particular treatment program or facility only as a condition of probation.[1] Moreover, the briefs filed in *Valencia* (Court of Appeals File No. A–8527) clearly explain that the defendant was confined in the residential treatment facility as a probationer, not a prisoner.

Because the defendants in *Valencia* and *Parker* were probationers, and not prisoners serving sentences of imprisonment, they were not expressly covered by the good time statute, AS 33.20.010. Valencia's argument for good time credit hinged on asking this Court to adopt an expansive interpretation of that statute, beyond its literal wording.

In *Valencia*, we rejected the contention that AS 33.20.010 should be interpreted so broadly as to cover probationers who were ordered to spend time in residential treatment as a special condition of probation.

1. *Rust v. State*, 582 P.2d 134, 137–38 (Alaska 1978); *State v. Combs*, 64 P.3d 135, 137 (Alaska App.2003) ("[The] designation of the prison facility to which the prisoner is to be confined ... is committed to the administrative discretion of the [Department] of Corrections, and not to the sentencing courts of Alaska.... [A] sentencing court does not have the authority to designate a particular prison facility in which a prisoner is to be confined.").

But our decision in *Valencia* casts no doubt on a *prisoner's* entitlement to good time credit if (in the words of AS 33.20.010) the prisoner "follows the rules of the correctional facility in which the prisoner is confined".

For all of these reasons, Judge Zervos correctly rejected the State's contention that prisoners are not entitled to good time credit unless they are housed at a correctional facility run by the State. Under the pertinent statutes, it does not matter who runs the correctional facility. Bourdon is entitled to good time credit for the time he spent at Glacier Manor.