NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JACOB ROLLER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13495
Trial Court No. 3AN-18-06237 CI

O P I N I O N

No. 2763 — November 9, 2023

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Doug Miller, The Law Office of Douglas S. Miller, Anchorage, for the Appellant. Christopher W. Yandel, Assistant Attorney General, Anchorage and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge TERRELL.

Jacob Roller appeals the denial of his post-conviction relief application, which challenged the calculation of his parole revocation sentence. Roller's application raised four claims, which all relied on changes to Alaska's parole system made in 2016

by Senate Bill 91, a large-scale revision of Alaska's criminal statutes.[1]  He now renews these contentions on appeal.

First, Roller argues that his parole revocation sentence is illegal because it requires him to be incarcerated after the maximum release date calculated by the Department of Corrections (DOC) on his original sentence.  He claims this violates the applicable 2017 version of AS 33.16.220(i), which provided that in revoking parole, "[t]he [Alaska Parole Board] may not extend the period of parole beyond the maximum release date calculated by the department [of corrections] on the parolee's original sentence[.]"[2]  We conclude that this provision prohibited extending the period of parole past a parolee's original maximum release date, but not from extending the period of incarceration past that date.  Stated differently, the parole board may only revoke parole and order a parolee's reincarceration for parole violations that occur before or on the original maximum release date for the parolee's sentence.

Second, Roller contends that the earned-compliance credits he accrued pursuant to AS 33.16.270 while on parole should also have been applied to reduce the length of his parole revocation sentence.  Alaska Statute 33.16.270 provides that earned-compliance credits reduce the "period of parole."  This argument, like his first argument, hinges on his claim that the term "period of parole" includes any period of incarceration imposed as the result of a parole violation.  We disagree and conclude that the earned-compliance credits only operate to reduce the parole supervision period on the original

_____

[1]  SLA 2016, ch. 36.

[2]  SLA 2016, ch. 36, §§ 148, 190 (effective date of Jan. 1, 2017).  This version of AS 33.16.220(i) was in effect when the parole board revoked Roller's parole in December 2017, and applied to Roller because it applied to "parole granted before, on, or after the effective date" of this provision.  SLA 2016, ch. 36, § 185(p).  Alaska Statute 33.16.220(i) was amended in 2019 to remove this language.  *See* FSSLA 2019, ch. 4, §§ 115, 142(g).

sentence, not to reduce the amount of time that may be imposed by the parole board for violating parole conditions.

Third, Roller claims that the earned-compliance credits statute, AS 33.16.270, applies retroactively, and that he became eligible for earned-compliance credits upon his February 2016 release on parole (prior to the statute's January 1, 2017 effective date). We rejected the assertion that AS 33.16.270 applies retroactively to time spent on parole prior to the statute's effective date in *Mosquito v. State*, and we adhere to that decision.[3]

Last, Roller claims that a DOC policy which computes earned-compliance credits on a calendar-month system rather than a 30-day system violates AS 33.16.270(1), which requires that such credits be awarded for "each 30-day period served in which the parolee complied with the conditions of parole."[4] We agree with Roller that the DOC policy is inconsistent with AS 33.16.270(1) and therefore invalid. We remand the case to the superior court so that Roller can have his earned-compliance credits recalculated for any time spent on parole on or after January 1, 2017.

*Background facts and procedural history*

Roller was arrested and remanded to custody on June 9, 2011. He later pleaded guilty to one count of second-degree sexual abuse of a minor and was sentenced

---

[3] *Mosquito v. State*, 504 P.3d 918, 920-23 (Alaska App. 2022).

[4] SLA 2016, ch. 36, § 151. The statute originally awarded 30 days of earned-compliance credits for every 30-day period in compliance with parole conditions, but was modified in 2019 to reduce the award to 10 days of earned-compliance credits for every 30 days of compliance with parole conditions. *See* FSSLA 2019, ch. 4, § 116.

to 20 years with 13 years suspended (7 years to serve) with 10 years of probation.[5] Roller was released on mandatory parole in February 2016 after having served two-thirds of his sentence. DOC calculated his maximum release date, *i.e.*, the date that his 7-year sentence would be deemed fully served absent any tolling events, as June 8, 2018.

Roller did not perform well on parole and was suspended from his mandated offender treatment program. As a result, the parole board revoked Roller's parole in December 2017 and imposed the remaining one-third of his original 7-year sentence, *i.e.*, 852 days.

Roller then sought post-conviction relief, raising the claims noted above. The superior court denied Roller's application for post-conviction relief and granted the State's summary judgment motion.

This appeal followed.


*Why we affirm the superior court's dismissal of Roller's post-conviction relief claims that hinge on the meaning of "period of parole"*

On appeal, Roller renews his arguments that (1) his parole revocation sentence is illegal because it extends his "period of parole" beyond his original maximum release date of June 8, 2018 and (2) this sentence should also be reduced by his earned-compliance credits because earned-compliance credits reduce the "period of parole." Both arguments hinge on the meaning of the term "period of parole" in AS 33.16.220(i) and AS 33.16.270. "Period of parole" is not statutorily defined. Roller asserts that "period of parole" includes time spent on parole supervision and any resulting parole revocation sentence. Roller's argument as to the meaning of AS 33.16.220(i) also requires us to interpret the undefined term "maximum release date."

---

[5]    AS 11.41.436(a)(2).

This case thus presents questions of statutory interpretation. "The proper interpretation of a statute is a question of law that we review *de novo*."[6] "When we interpret a statute, our task is 'to ascertain the legislature's intent and then to construe the statute so as to implement that intent.'"[7] We interpret statutes "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[8] When a term is undefined, we assume that the legislature intended the ordinary, common meaning of that term, unless it has acquired a particular meaning by judicial construction or long-standing usage.[9] We use "a sliding scale approach to statutory interpretation, in which 'the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.'"[10]

*1. Alaska's parole system prior to the 2016 changes in Senate Bill 91*

In order to understand why we reject Roller's proposed meaning of the term "period of parole," we begin with an overview of Alaska's system of parole, in particular as it existed in 2016 when Senate Bill 91 was enacted.

---

[6]   *Lee v. State*, 503 P.3d 811, 816 (Alaska App. 2021).

[7]   *R.C. v. State*, 435 P.3d 1022, 1026-27 (Alaska App. 2018) (quoting *Williams v. State*, 2015 WL 4599554, at *3 (Alaska App. July 29, 2015) (unpublished)).

[8]   *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016) (quoting *State, Div. of Workers' Comp. v. Titan Enters., LLC*, 338 P.3d 316, 320 (Alaska 2014)).

[9]   *Knolmayer v. McCollum*, 520 P.3d 634, 643 (Alaska 2022) (first proposition); *Atkins v. Inlet Transp. & Taxi Serv., Inc.*, 426 P.3d 1124, 1132 & n.23 (Alaska 2018) (citing AS 01.10.040(a), which provides: "Technical words and phrases and those that have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning.").

[10]   *Adamson v. Anchorage*, 333 P.3d 5, 11 (Alaska 2014) (quoting *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013)).

Alaska has traditionally had two types of parole, discretionary and mandatory, the first requiring a decision from the parole board to release the inmate, the second occurring automatically by operation of law.[11] The time when an inmate becomes eligible to seek release on discretionary parole typically occurs earlier in the course of an inmate's sentence than does the mandatory parole release date. For inmates serving time on discretionary-parole-eligible offenses, they are eligible to apply for discretionary parole after serving some fixed percentage of their sentence, usually one-third or one-fourth.[12] If the parole board, after reviewing an inmate's application, concludes that the inmate meets the criteria set out in AS 33.16.100(a) for discretionary parole release, then the parole board in its discretion may issue an order releasing the inmate from prison onto discretionary parole, subject to conditions of parole and supervision by a parole officer.[13] Once out on parole, the parolee remains in the legal custody of the parole board "until the expiration of the maximum term or terms of imprisonment to which the parolee [was] sentenced."[14] If the parolee violates their parole conditions during their period of parole supervision, the parolee is subject to having their parole revoked and being remanded to prison to serve the remainder (or a portion) of their sentence.[15]

---

[11]    *See* former AS 33.16.010 (pre-July 2016); *State v. Staael*, 807 P.2d 513, 517 (Alaska App. 1991).

[12]    *See* former AS 33.16.090 (pre-July 2016) (eligibility for discretionary parole).

[13]    Former AS 33.16.140-.150 (pre-July 2016).

[14]    Former AS 33.16.200 (pre-July 2016).

[15]    Former AS 33.16.220(i) (pre-July 2016) ("If, after the final revocation hearing, the board finds that the parolee has violated a condition of parole . . . , the board may revoke all or a portion of the parole, or change any condition of parole."); 22 Alaska Administrative Code (AAC) 20.512 ("A prisoner whose discretionary parole is revoked is required to serve the remainder of the sentence that the prisoner was sentenced to serve.").

Mandatory parole, by contrast, occurs later during the service of an inmate's sentence, after service in prison of at least two-thirds of the sentence. When an inmate is sentenced to a term of imprisonment exceeding 3 days for an offense that is eligible for good-time credits, DOC automatically awards the inmate good-time credits equal to one-third of their sentence (unless they are convicted of an offense that is not eligible for good-time credits).[16] And "[u]nder AS 33.20.030, when a prisoner's actual time in prison, combined with their good-time credit, equals the number of days that the prisoner was sentenced to serve, the prisoner shall be released."[17] If the sentence (or composite sentence) of imprisonment that the inmate is serving is two years or greater, the inmate is released onto mandatory parole to complete a term of parole equal to the period of good time, "until the expiration of the maximum term to which the prisoner was sentenced," subject to parole conditions set by the board and supervision by a parole officer.[18] This means that most inmates serving felony sentences on good-time-eligible offenses spend the last third of their sentence out of prison on mandatory parole supervision. If the mandatory parolee violates their parole conditions, the parole board

---

[16]  *See* former AS 33.20.010(a)(1)-(4) (pre-July 2016); *State v. McCallion*, 875 P.2d 93, 94-99 (Alaska App. 1994) (holding that Alaska law requires the "block method" where good-time credits are automatically awarded in a block at the outset of the sentence). Pursuant to AS 33.20.050, good-time credits can be forfeited as a sanction for prison disciplinary infractions, thus delaying the inmate's mandatory parole release date by the amount of the forfeited credits.

[17]  *Hill v. State*, 22 P.3d 24, 26 (Alaska App. 2001).

[18]  AS 33.20.040(a); *Jackson v. State*, 31 P.3d 105, 108-09 (Alaska App. 2001); *Wilson v. State*, 944 P.2d 1191, 1192-93 (Alaska App. 1997); *Callan v. State*, 904 P.2d 856, 857-58 (Alaska App. 1995). If the sentence or composite sentence is less than 2 years, the inmate is released unconditionally, *i.e.*, is not subject to mandatory parole, but the releasee could be subject to probation supervision if their original sentence included probation.

may revoke all or a portion of their good-time credits and impose a sentence of incarceration equal in length to the amount of good-time credits revoked.[19]

After an inmate is sentenced, DOC performs a time-accounting analysis which tells the inmate the date projected for their release from prison onto mandatory parole and their "maximum release date."[20] The latter term is not defined by statute or regulation, but was defined by formal DOC agency policy when the legislature amended AS 33.16.220(i) in 2016. We thus assume that the legislature relied on that definition of "maximum release date."[21] Former DOC Policy and Procedure 602.06(VII)(H) defined "maximum release date" as "[t]he date on which the sentence expires, without consideration for the award of good time, but subtracting all prior service."[22] The result is that the original "maximum release date" on a sentence is the date projected for the

---

[19] Former AS 33.16.220 (pre-July 2016); 22 AAC 20.275.

[20] Alaska Dep't of Corr., *Policies & Procedures*, 601.01(Procedures)(III)(A)-(B) (Jan. 21, 2020), https://doc.alaska.gov/pnp/pdf/601.01.pdf; Alaska Dep't of Corr., *Policies & Procedures*, 601.01a, *Time Accounting Record* (Jan. 21, 2020) https://doc.alaska.gov/pnp/pdf/601.01a.docx.

[21] *See Wilson v. State, Dep't of Corr.*, 127 P.3d 826, 829-32 (Alaska 2006) (stating that courts may look to "how administrative agencies have used the words" in construing undefined terms in a statute; relying on a DOC regulation which pre-dated a statute using the term "place of arrest" in evaluating what the similarly worded statute meant).

[22] Alaska Dep't of Corr., *Policies & Procedures*, 602.06(VII)(H) (May 5, 2008) (on file with DOC). This policy, which addressed "Time Accounting . . . for Sentences or Portions of Sentences Served on or After April 9, 1986" was repealed effective July 19, 2017. Alaska Dep't of Corr., *Policies & Procedures*, 602.06 Repeal Memorandum (July 19, 2017), https://doc.alaska.gov/pnp/pdf/602.06.pdf. The repeal does not represent a retreat from DOC's long-standing definition of "maximum release date" but rather a shift to placing DOC's time-accounting rules and procedures into DOC's time-accounting manual. *See* Alaska Dep't of Corr., *Policies & Procedures*, 601.01 (Jan. 21, 2020), https://doc.alaska.gov/pnp/pdf/601.01.pdf.

inmate's complete release from the physical and constructive custody of the state when the inmate has fully served the term of incarceration imposed (either by serving it all in prison, or through a combination of imprisonment and time on parole supervision, where the service is continuous and not interrupted by any tolling events or parole violations).[23] *Cf.* AS 12.55.185(18) ("'unconditional discharge' means that a defendant is released from all disability arising under a sentence, including probation and parole").

There remains one additional feature common to all these types of parole and which is significant to this appeal. Since 1960, Alaska law has provided that if a parolee has their parole revoked and the remainder of their sentence (or a portion of it) imposed, they do not receive credit against that parole revocation sentence for the time that they spent out of prison on release in the community under parole supervision. That provision was first enacted in former AS 33.15.200, a statute entitled "Retaking of Parole Violator; Time to Serve Undiminished," and which provided in relevant part: "The unexpired term of imprisonment of any such parolee shall be served and shall begin to run from the date [the parolee] is returned to the custody of the Commissioner under [the] warrant, and *the time the prisoner was at liberty on parole shall not diminish the time [the parolee] was sentenced to serve.*"[24] The first part of the quoted language

---

[23] The latter point, *i.e.*, the assumption that future service of the sentence is uninterrupted by any tolling events, is the sense that Alaska's courts have used in discussing "sentence expiration" in terms of an originally calculated maximum release date. *See, e.g.*, *Gordon v. State*, 533 P.2d 25, 27 (Alaska 1975) (stating that "Schumacher . . . was serving a sentence that was due to expire on July 14, 1974, assuming that his good time was not revoked for any reason during the interim").

[24] SLA 1960, ch. 81, § 9 (emphasis added). Both the Alaska Supreme Court and this Court have noted that Alaska's parole statutes were derived from and modeled on the federal parole statutes in existence when Alaska assumed statehood. *See Morton v. Hammond*, 604 P.2d 1, 2 (Alaska 1979); *Hampel v. State*, 911 P.2d 517, 522 (Alaska App. 1996). The

(continued...)

simply means that if the parolee is held in prison awaiting parole revocation proceedings, that their time in prison will be credited against their subsequent parole revocation sentence.[25] The italicized language illustrates the operative principle relevant to this appeal, *i.e.*, that under Alaska law, time spent out of prison on parole supervision is not credited against a later parole revocation sentence.[26]

This provision was moved to AS 33.16.240(f) when Title 33 was revised in 1985 and provides: "Time spent in custody pending revocation proceedings shall be credited toward the unexpired term of imprisonment of the parolee; however, the time the parolee was at liberty on parole does not alter the time the parolee was sentenced to serve."[27] We relied on AS 33.16.240(f) in denying credit for time spent on discretionary parole release against a parole revocation sentence in *Dulier v. State*.[28] We have also

---

[24]   (...continued)
federal statute on which former AS 33.15.200 was modeled was 18 U.S.C. § 4205 (1958), which dealt with retaking of parole violators, and which provided in relevant part: "The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve."

[25]   *See Reynolds v. State*, 595 P.2d 21, 23 (Alaska 1979).

[26]   Our discussion of this point is confined to those situations where the parolee is at liberty and subject to general parole supervision, not situations where the parolee is subject to restrictive conditions that approximate imprisonment. A parolee is entitled to credit against a parole revocation sentence for time spent on parole subject to conditions that approximate imprisonment. *See State v. Shetters*, 246 P.3d 338, 340-41 (Alaska App. 2010).

[27]   SLA 1985, ch. 88, § 2.

[28]   *Dulier v. State*, 789 P.2d 372, 373-74 (Alaska App. 1990).

relied on the rule embodied in this statute in two other decisions which did not explicitly cite it, *State v. Merry* and *Hill v. State*.[29]

### 2. The term "period of parole" as used in the pre-2016 statutes meant post-release time out of prison on parole supervision, and did not include a period of incarceration imposed for violating parole conditions

With this general background on parole in mind, we turn to the meaning of the term "period of parole" as used in the Alaska Statutes prior to the changes made by Senate Bill 91 in 2016. The term was then and still remains undefined in the Alaska Statutes, and in 2016 was used in three slightly variant forms.[30] But while the term "period of parole" is not statutorily defined, the term "parolee" is defined. "Parolee" is defined as "a prisoner, sentenced to one or more terms of imprisonment exceeding 180 days in the case of discretionary parole and of two years or more in the case of mandatory parole, *released* by the [parole] board or by operation of law before the expiration of the term, subject to the custody and jurisdiction of the [parole] board."[31] Under this definition, "parole" refers to release from prison on parole conditions and subject to the custody and jurisdiction of the parole board. Consequently, a "period of parole" is the period during which the parolee is released from prison and on parole supervision status.

---

[29] *State v. Merry*, 784 P.2d 253, 256 (Alaska App. 1989); *Hill v. State*, 22 P.3d 24, 28-29 (Alaska App. 2001).

[30] *See* AS 33.16.085(a)(6) (providing as condition for releasing an inmate on special medical parole, that "the prisoner is likely to remain subject to the severe medical or cognitive disability throughout the entire period of parole"); former AS 33.16.210(b) (pre-July 2016) ("period of mandatory parole"); AS 33.16.240(g) ("period of parole supervision"); AS 33.20.040(c) ("period of mandatory parole").

[31] AS 33.16.900(11) (emphasis added).

This is the manner in which "period of parole" is used in the pre-1984 federal parole system from which Alaska's parole statutes derive, and in other jurisdictions.[32] The ordinary meaning of "parole" does not involve being in prison, and this is a situation where the ordinary meaning of a term matches its historical usage in statutory provisions.[33] For this reason, Roller's argument that historical use of the term "period of parole" includes any parole revocation sentence is not supported by the basic meaning of the term.

---

[32] *See Hyser v. Reed*, 318 F.2d 225, 235 (D.C. Cir. 1963) (en banc) ("During the period of parole, the prisoner on conditional liberty is subject to the supervision of the Board acting through a federal parole officer."); *Parker v. Kelchner*, 429 F.3d 58, 60 n.2 (3d Cir. 2005) (quoting long-standing Pennsylvania statute stating "that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision").

[33] The standard definition of "parole" is "[t]he conditional release of a prisoner from imprisonment before the full sentence has been served." "Parole," Black's Law Dictionary (11th ed. 2019); *cf. Callan v. State*, 904 P.2d 856, 859-60 (Alaska App. 1995) (Mannheimer, J., concurring) (noting that "it appears strained (at best) to suggest that AS 33.20 should be construed to place a prisoner on 'parole' at the same time that he or she is actually imprisoned and serving another sentence"). In an analogous context, the Alaska Supreme Court recognized that incarceration status is inconsistent with being on probation. *Boyne v. State*, 586 P.2d 1250, 1251-52 (Alaska 1978). "Thereafter, the legislature enacted AS 12.55.086, giving the trial courts such authority [to impose a period of imprisonment as a condition of a suspended imposition of sentence]." *Schmid v. State*, 615 P.2d 565, 578 (Alaska 1980). The basics of Alaska's parole system are set by statute, and the legislature is free to use the term "parole" in a non-standard way that includes time spent in prison, but it must be evident from a statute's text or legislative history that such usage was intended.

*3. The 2016 legislation amending AS 33.16.220(i) and adding AS 33.16.270 does not evince an intent to alter the meaning of the term "period of parole"*

We next examine Roller's claims in the larger context of the 2016 statutory amendments at issue. Starting with AS 33.16.220(i), the legislature amended that statute to add the following italicized language:

> (i) If, after the final revocation hearing, the board finds that the parolee has violated a condition of parole imposed under AS 33.16.150(a), (b), or (f), or a law or ordinance, the board may revoke all or a portion of the *remaining period of* parole *subject to the limits set out in AS 33.16.215*, or change any condition of parole. *A parolee's period of parole is tolled from the date of filing with the parole board of a violation report for absconding and the date of the parolee's arrest, if the parole board finds, after a hearing, that the parolee violated parole by absconding, as defined in AS 33.16.215(f). The board may not extend the period of parole beyond the maximum release date calculated by the department on the parolee's original sentence plus any time that has been tolled as described in this section.*[34]

As seen below, the key language at issue — "The board may not extend the period of parole beyond the maximum release date calculated by the department on the parolee's original sentence" — was inserted to address a problem created by the parole board's ability to revoke and reparole. That is, when the parole board concludes that a parolee has violated their conditions of parole, returning the parolee to prison is not the Board's only option; rather, the parole board also has the option to revoke parole and then immediately return the person to parole status.[35] If this happens near the end of the

---

[34]    SLA 2016, ch. 36, § 148.

[35]    Prior to the 2016 amendment, AS 33.16.220(i) provided that if a violation was found,

(continued...)

parolee's parole supervision period, this action, combined with the lack of credit for time spent out of prison on parole, can result in the parole board's jurisdiction over the parolee, in the form of parole supervision, being extended well beyond the parolee's original maximum release date. And because the parole board, at a revocation hearing on a second or subsequent petition to revoke parole, also retains the option to revoke parole and order the person to serve in prison all or a portion of their remaining sentence, the net effect of all the foregoing is that the revoke-and-reparole cycle can result in a person being in the physical or legal custody of the state well beyond their original maximum release date.

The concern with this outcome, from a parolee's perspective, is that it may lead to a situation where a parolee feels ensnared and that they are never going to be free of state custody, despite their best efforts, and thus give up on earnest efforts at rehabilitation. A citizen brought this issue to the legislature's attention during Senate Bill 91's consideration.[36] Later, during a House Finance Committee meeting, Representative Tammie Wilson noted that "multiple sources" had brought this practice

___

[35] (...continued) "the board may revoke all or a portion of the parole, or change any conditions of parole." This authority is further explicated in 22 AAC 20.510(a), which provides that "[t]he board may make any of the following decisions at a final revocation hearing," including "(2) find that the parolee has violated conditions of parole, and return the parolee to supervision with a warning," and "(5) find that the parolee has violated conditions of parole, revoke the parole, and subject to any preconditions established by the board, reparole the parolee."

[36] Jackie Stefano sent Senate Bill 91's sponsor, Senator John Coghill, a written statement noting the revoke-and-reparole problem, and this statement was forwarded to other legislators. *See* Letter from Jackie Stefano to Senator John Coghill, Senate Bill 91, Senate State Affairs Committee Bill File for Senate Bill 91 (March 3, 2016) (on file with the Legislative Reference Library).

to her attention.[37]  In response, Public Defender Quinlan Steiner explained (in apparent reference to the amendments to AS 33.16.220(i)) that the Public Defender Agency successfully inserted a provision into the bill that would put limits on the practice of revoking and reparoling.[38]

From a statutory standpoint, prior to Senate Bill 91's enactment in 2016, this negative outcome of the revoke-and-reparole cycle was made possible by two things. First, pursuant to AS 33.16.240(f), a parolee does not receive credit against a parole revocation sentence for time spent on parole.  Second, there was no statutory limit on extending parole supervision beyond the parolee's original maximum release date. Stated differently, changing this outcome could be achieved by changing one or both aspects of existing law.  The task posed by Roller's appeal is discerning whether the legislature chose to address the problem by adopting the first, second, or both options.

For a legislator interested in limiting the revoke-and-reparole cycle, but also concerned that parolees remain incentivized to comply with their parole conditions, the first option — changing the law to allow credit against a parole revocation sentence for time spent on parole — alleviates the problem of the revoke-and-reparole cycle.  But the first option lessens the amount of suspended time that is left to impose for a parole violation. Thus, the parolee's incentive to comply with parole conditions is also lessened as the person approaches the end of their sentence.

---

[37]  Audio of House Fin. Comm., Senate Bill 91, comments of Rep. Tammie Wilson, 3:14:05-3:14:46 p.m (Apr. 20, 2016).

[38]  Steiner testified that Senate Bill 91 would limit the State's ability to revoke and reparole, stating that the State "would not have the ability to extend the parole time indefinitely" and that the bill "would put a decided end to a person's *parole time*." Audio of House Fin. Comm., Senate Bill 91, testimony of Quinlan Steiner, Pub. Def. Agency, 3:16:26-3:17:07 p.m. (Apr. 20, 2016) (emphasis added).

Roller nonetheless argues that the legislature in Senate Bill 91 adopted this method of dealing with the problem of the revoke-and-reparole cycle, overruling *Hill* and creating an implied amendment or exception to AS 33.16.240(f). But Roller cites to no legislative history showing any kind of discussion by legislators of an intent to overrule *Hill* or to repeal or amend AS 33.16.240(f), and we have been unable to locate any support for that proposition in the legislative record.[39] Moreover, Senate Bill 91 left AS 33.16.240(f) completely undisturbed.

Roller relies on Public Defender Quinlan Steiner's statements to support his claim that the legislature opted to credit parole supervision time against a parole revocation sentence. In response to Representative Wilson's question about the effect Senate Bill 91 would have on the revoke-and-reparole cycle for a person released onto mandatory parole after serving 2 years of a 3-year sentence, Steiner stated:

> They'll get out at 2 years with good time and then they'll be on parole for a year. During that time, if they commit a violation, the parole board has the authority to do what's called a revoke and reparole. So they may be in custody for only a very short period of time right before the end of their year. If they're revoked and re-paroled, they have to do that year on parole over again.
>
> . . . .
>
> If [Senate Bill 91] were to pass now, if you did your 2 years and you were out, your probation or your parole time would run for the entire year. If you were to violate at any point during that year and a parole violation or report was filed, your period while you were in custody would toll, meaning the time would stop running. But then once it was all done and you were back out on the street it would run

---

[39] *See Good v. Anchorage*, 450 P.3d 693, 698 (Alaska App. 2019) (stating that the "legislative intent is key" in assessing whether a statute has been impliedly repealed).

again from when you went in. So you would have essentially gotten credit for the time you were on the street. It would extend it some beyond the three years, but it wouldn't have the ability to extend it essentially indefinitely. It would put a decided end to your *parole time*. . . . I need to correct the — it tolls if you abscond, not while you're in custody. You're actually be [sic] getting credit for that time you're in custody. [40]

We do not interpret Steiner's impromptu remarks in the same fashion as Roller. Rather, we interpret them as consistent with our conclusion that AS 33.16.220(i) prohibits extending the parole end date past the maximum release date on the parolee's original sentence. In practical terms, for the parolee who is revoked and reparoled near the end of their parole supervision period, they in essence receive credit for their time spent out of prison on parole, in the sense that their parole end date remains the same. This was Steiner's core point in stating that the parolee "would have essentially gotten credit for the time [they] were on the street."

We recognize that some of Steiner's remarks can be read as setting out the view that a parolee should get credit against a parole revocation sentence for time spent on parole supervision. We decline to interpret AS 33.16.220(i) in this fashion for three reasons.

First, the testimony is ambiguous, containing several uses of the indistinct referent "it," with potentially different meanings for each use.

Second, this interpretation would involve a non-standard use of the term "period of parole" to include time spent in prison, as part of a parole-revocation sentence. In the absence of statutory language explicitly so providing, we would expect strong

---

[40] Audio of House Fin. Comm., Senate Bill 91, testimony of Quinlan Steiner, Pub. Def. Agency, 3:15:14-3:15:49 p.m., 3:16:26-3:17:07 p.m., and 3:17:14-3:17:22 p.m. (Apr. 20, 2016) (emphasis added).

legislative history to support such a reading. But there is no sectional analysis or committee report that states that this is what the legislature intended, nor is there a statement from even one legislator to that effect.

Third, this interpretation would involve an implicit repeal or amendment of AS 33.16.240(f), and again we would expect clear legislative history to support such a result. Brief remarks by a legislative witness — even one who had input into the bill's formulation — do not overcome the statute's plain language.

The only sure conclusion that we can draw from the text and legislative history of Senate Bill 91 is that the legislature adopted the second option for dealing with the problem of the revoke-and-reparole cycle — that of imposing an outer limit on the time when a parolee's period of parole supervision can be extended. Pursuant to the 2016 amendment to AS 33.16.220(i), the parole board may not extend the parolee's "period of parole" beyond the maximum release date calculated by DOC on the parolee's original sentence. The legislature did not completely eliminate the parole board's ability to revoke and reparole a parolee on more than one occasion. Rather, what it did do was cap the parolee's parole supervision period at the original maximum release date, and the parole board's associated ability to revoke parole to violations occurring on or before that date. This preserves the efficacy of parole revocation as a deterrent to misbehavior during the entire parole supervision period of the original sentence.

The parole board can revoke parole up until the original maximum release date, but when a parole revocation sentence extends the parolee's period of incarceration past the original maximum release date, further parole supervision is terminated, ending the period of parole.[41] In other words, this provision does not prohibit imposing a term

---

[41] When the parole board revokes parole and imposes a parole revocation sentence that extends the inmate's incarceration past the original maximum release date, the inmate is still
(continued...)

of incarceration that extends beyond the original maximum release date, so long as the sentence is based on a revocation flowing from parole supervision prior to the expiration of the original maximum release date. The amendments to AS 33.16.220(i) address the revoke-and-reparole problem noted by Roller but in a more targeted and modest fashion than Roller's interpretation of the provision.

Roller's second primary argument is that the term "period of parole" as used in the earned-compliance credits statute, AS 33.16.270, encompasses the good-time credits that are available to be reimposed for a parole violation as a parole revocation sentence. His argument conflates the period of parole supervision with the sentence that may be imposed for violating the terms of that supervision.

Our decision in *Hill v. State* recognizes that these components of a sentence are distinct.[42] And as can be seen in our decision in *Mosquito v. State*, earned-compliance credits reduce the parole supervision period, *i.e.*, the period of parole, but not the time that may be imposed if the parolee violates parole conditions.[43] When the total amount of earned-compliance credits, as measured backwards from the person's maximum release date, meets with the period of parole supervision, the parolee is unconditionally discharged from parole supervision. But until the parolee reaches that

[41] (...continued) entitled under 22 AAC 20.275 to an award of good-time credits on the parole revocation sentence. The difference is that such credits have the same effect as they do on sentences of incarceration that are less than 2 years, *i.e.*, they do not give rise to another round of mandatory parole, but rather are a form of sentence commutation that result in the inmate's unconditional release once he has served the parole revocation sentence less good-time credits. *Cf. Hill v. State*, 22 P.3d 24, 26 (Alaska App. 2001) (noting that good-time credits result in unconditional release for inmates whose composite sentence is less than 2 years).

[42] *Hill*, 22 P.3d at 27.

[43] *See Mosquito v. State*, 504 P.3d 918, 920 (Alaska App. 2022).

point, they remain subject to having all of their remaining sentence imposed if they violate parole conditions.

(The amendments to AS 33.16.220(i) were designed in part to avoid the indirect loss of earned-compliance credits awarded pursuant to AS 33.16.270. The 2016 version of AS 33.16.270 awarded 30 days of earned-compliance credit for every 30 days of compliance with parole conditions, thus reducing the period of parole. At a maximum, the period of parole could be cut in half if the parolee had perfect compliance. But even if the parolee had less than perfect compliance, the net effect was to reduce the period of parole supervision below the original maximum release date.

If the parole board was permitted to extend the period of parole past the original maximum release date, the earned-compliance credits would be effectively nullified. If parolees knew from the outset that their efforts at compliance might be in vain in terms of reducing their parole supervision period, they would have less incentive to comply with parole conditions in order to obtain earned-compliance credits. The sectional analysis for the section of Senate Bill 91 amending AS 33.16.220(i) thus noted that one of the purposes of prohibiting the parole board from extending the period of parole past the original maximum release date was to avoid the indirect loss of earned-compliance credits.[44])

---

[44] *See* Sectional Analysis for Senate Bill 91 (Version N), Senate State Aff. Comm., Senate Bill 91 (*i.e.*, the Sponsor Substitute for Senate Bill 91, 2016), at § 121 (stating that the amendments to AS 33.16.220(i) were "[c]onforming to ensure that any credits a parolee earned for compliance under Section 88 cannot indirectly be taken away through a board extension of the term of parole"). The reference to Section 88 was a misnomer. That section dealt with the conceptually identical probation earned-compliance credits provision, but it is evident from the language that the sectional analysis meant the parole earned-compliance credits provision. This analysis (and the misnomer) were repeated in later versions of the sectional analysis for the bill. *See, e.g.*, Sectional Analysis for Senate Bill 91 (Version I),

(continued...)

Roller's arguments regarding his interpretation of the term "period of parole" in AS 33.16.220(i) and AS 33.16.270 thus fail for the foregoing reasons. The parole board was authorized to impose a *period of incarceration* that extended beyond Roller's original maximum release date. Likewise, DOC correctly did not credit Roller's earned-compliance credits against his parole revocation sentence because those credits only applied to the parole supervision term.

*Why we reject Roller's claim for retroactive application of the earned-compliance credits statute*

Roller's derivative claim regarding the earned-compliance credits statute, AS 33.16.270, is that it applies retroactively, such that his eligibility for earned-compliance credits should have commenced when he was released onto mandatory parole in February 2016. Roller forfeited this claim by not obtaining a ruling on it from the superior court.[45] Moreover, at oral argument Roller recognized that our recent decision in *Mosquito v. State* resolves this claim against him.[46] Thus, even if Roller had not forfeited the claim, he would still have to convince us that *Mosquito* was erroneously decided in order to receive relief.[47] Roller has provided no basis to disregard the doctrine of *stare decisis* and we adhere to our decision in *Mosquito*.

---

[44] (...continued)
Senate State Aff. Comm., Senate Bill 91 (2016), at § 122.

[45] The familiar principle that a litigant forfeits a claim in the lower courts if they fail to obtain a ruling applies to post-conviction relief actions. *See, e.g.*, *Marshall v. State*, 2018 WL 2472698, at *3 (Alaska App. Apr. 25, 2018) (unpublished); *Hertz v. State*, 2015 WL 3648553, at *1 (Alaska App. June 10, 2015) (unpublished).

[46] *Mosquito*, 504 P.3d at 922-23.

[47] The Alaska Supreme Court denied Mosquito's petition for hearing. *See Mosquito v. State*, Supreme Court File No. S-18439 (Order dated Jan. 27, 2023).

*Why we remand for recalculation of any earned-compliance credits that*
*Roller may be entitled to for time spent on parole after January 1, 2017*

Roller's final claim is that DOC's Policy and Procedure 902.09, which directs that earned-compliance credits should be awarded for every calendar month that a parolee complies with his parole conditions, conflicts with former AS 33.16.270(1) (2017), which required that earned-compliance credits be awarded "for each 30-day period served in which the parolee complied with the conditions of parole."[48] We agree.

Alaska Statute 01.10.060(a)(3) defines "month" as "a calendar month." If the legislature meant to adopt a calendar-month method of awarding credits it would have used the term "month" instead of "30-day period." And treating "30-day period" to mean "month" runs contrary to legislative intent to encourage compliance with parole conditions. Seven months have thirty-one days, so parolees who violate conditions on the first or thirty-first days of the month would not receive credit, even if they had 30 days of compliance that month. A parolee who was in compliance generally but violated conditions on July 1st and August 31st would not receive any credit for the intervening 60-day period of compliance. And a parolee would receive credit for only 28 days of compliance for the month of February — 29 in leap years — which is at odds with the language of the statute.

---

[48] *Compare* Alaska Dep't of Corr., *Policies & Procedures*, 902.09 (Dec. 29, 2016) (on file with DOC), *with* former AS 33.16.270(a)(1) (2017). Alaska Statute 33.16.270 requires DOC to enact regulations regarding earned-compliance credits. Enacting policy in a policy and procedure manual is insufficient. *See* AS 44.62.180-.290 (establishing the procedural requirements for the adoption of administrative regulations, including requiring the publication of the proposed action and public comment); *North Slope Borough v. State*, 484 P.3d 106, 117 (Alaska 2021) ("The [Alaska Administrative Procedure Act] establishes basic minimum procedural requirements for the adoption, amendment, or repeal of administrative regulations. An agency's failure to satisfy the [Alaska Administrative Procedure Act]'s procedural requirements renders its action invalid." (alterations and citations omitted)).

We therefore remand this case to the superior court to recalculate, using 30-day compliance periods, any earned-compliance credits Roller may be eligible for based on time spent on parole supervision on or after January 1, 2017. (The superior court may direct that DOC perform this recalculation in the first instance.)

*Conclusion*

The judgment of the superior court is AFFIRMED, with the exception that this case is remanded for recalculation of any earned-compliance credits that Roller may be eligible for based on time spent on parole supervision on or after January 1, 2017.