NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter. Readers are encouraged to bring typographical or other*
*formal errors to the attention of the Clerk of the Appellate Courts:*
*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DAVID MIDDLETON II,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13173
Trial Court No. 3AN-17-09317 CI

O P I N I O N

No. 2787 — August 2, 2024

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael D. Corey and Dani Crosby, Judges.

Appearances: Laurence Blakely (opening brief) and Rachel E. Cella (supplemental and reply briefs), Assistant Public Defenders, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Anna L. Marquez, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge TERRELL.

David Middleton II appeals the denial of his application for post-conviction relief, arguing that the Department of Corrections (DOC) unlawfully extended his maximum release date — *i.e.*, the date by which defendants must have served all of their active term of imprisonment through a combination of incarceration

and parole supervision.[1] More specifically, Middleton argues that the 2016 amendment to AS 33.16.220(i) applied retroactively,[2] rendering DOC's 2015 action, which resulted in an extension of his maximum release date, unlawful. For the reasons explained here, we reject this retroactivity claim and affirm the judgment of the superior court.

*Relevant background*

In 2006, Middleton was sentenced in two separate cases to a composite term of 4,750 days to serve. In accordance with the applicable statutes, DOC calculated Middleton's mandatory parole release date as March 23, 2013, and his maximum release date as July 23, 2017.

In 2013, Middleton was released on parole. After his initial release, he was repeatedly brought back into custody for various parole violations. He also committed a new criminal offense for which he received a 1-year sentence in September 2015.

In December 2015, the Alaska Parole Board revoked Middleton's parole and imposed a parole revocation sentence of 1,583 days (*i.e.*, one-third of Middleton's original composite sentence). DOC then conducted its time-accounting analysis, combining this sentence with Middleton's 1-year sentence for the new offense and a 60-day sentence he received for a probation violation (concurrent to the parole revocation sentence), yielding a composite sentence of 1,948 days. In accordance with the applicable statutes, DOC recalculated Middleton's mandatory parole date as March 20, 2018 and his maximum release date as December 29, 2019.

In July 2016, the Alaska legislature enacted Senate Bill 91, which *inter alia*, amended AS 33.16.220(i), the provision authorizing the parole board to revoke all or a portion of a defendant's remaining parole. This amendment stated that the parole

---

[1]    *Roller v. State*, 539 P.3d 518, 522-23 (Alaska App. 2023).

[2]    SLA 2016, ch. 36, § 148. In 2019, the legislature repealed this provision. *See* FSSLA 2019, ch. 4, § 115.

board could not "extend the period of parole beyond the maximum release date calculated by [DOC] on the parolee's original sentence."[3]

In September 2017, the parole board revoked Middleton's parole again and imposed a parole revocation sentence of 711 days. DOC subsequently recalculated Middleton's mandatory parole date as June 13, 2019, but determined that Middleton's maximum release date of December 29, 2019 had not changed.[4]

Following this September 2017 disposition, Middleton was under the mistaken impression that DOC had recalculated his maximum release date to December 29, 2019 when it conducted its 2017 time-accounting analysis. Based on this mistaken impression, Middleton filed an application for post-conviction relief, arguing that the parole board's 2017 action violated the 2016 amendment to AS 33.16.220(i). The State opposed but did not correct Middleton's mistaken impression about when the change to his maximum release date occurred. The superior court conducted a statutory interpretation analysis of AS 33.16.220(i), rejected Middleton's claim, and denied his post-conviction relief application. Middleton then appealed.

While Middleton's appeal was pending, the State realized that DOC had recalculated Middleton's maximum release date in December 2015 — *i.e.*, *before* the 2016 amendment to AS 33.16.220(i) was enacted and took effect. Middleton's case was then remanded to the superior court so that the parties could litigate whether the 2016 amendment had an impact on the parole board's December 2015 action.

On remand, Middleton argued that the 2016 amendment to AS 33.16.220(i) was retroactive and that the December 2015 revocation of Middleton's

---

[3] SLA 2016, ch. 36, § 148. In 2019, the legislature repealed this provision. *See* FSSLA 2019, ch. 4, § 115.

[4] The notice accompanying the parole board's revocation decision stated that Middleton would not have parole supervision following his release from prison unless he was released prior to December 29, 2019, in which case he would remain on parole until that date.

parole, which resulted in an extension of his maximum release date, was therefore invalid. The superior court rejected this claim, ruling that the 2016 amendment to AS 33.16.220(i) was not retroactive and therefore did not affect the validity of the parole board action that extended Middleton's maximum release date. The court dismissed Middleton's post-conviction relief application for the second time.

This appeal followed.

*Why we reject Middleton's retroactivity claim*

On appeal, Middleton recognizes that when the parole board revoked his parole in December 2015 and DOC recalculated his maximum release date to December 29, 2019, these actions were legal. But he argues that the 2016 amendment to AS 33.16.220(i) was retroactive, and that the December 2015 action was invalidated by the enactment of this amendment.

Middleton bases his retroactivity claim on the language in the enacting session law's applicability clause, which stated that the amended provision applied "to parole granted before, on, or after [its] effective date."[5] Middleton relies on *Stoneking v. State* for the proposition that use of the language "before, on, or after" in an applicability clause automatically leads to the conclusion that the statute is fully retroactive.[6] Middleton is in error.

*Stoneking* dealt with a 1995 legislative amendment to AS 12.55.088, a statute providing for post-judgment modification of criminal sentences. The 1995 amendment changed the way defendants may obtain sentence modifications.[7] The amendment's applicability clause provided that it applied to "offenses committed

---

[5] SLA 2016, ch. 36, § 185(p)(7).

[6] *Stoneking v. State*, 39 P.3d 522, 523 (Alaska App. 2002).

[7] SLA 1995, ch. 79, §§ 6, 30.

before, on, or after" its July 1, 1995, effective date.[8] We interpreted this language as making the statutory change in *Stoneking* fully retroactive.[9] But our decision in *Stoneking* did not go so far as to hold that every time "before, on, or after" language is used, the affected statute is fully retroactive. That is an over-simplification of our decision in *Stoneking*.

As a general matter, in evaluating whether and to what extent a statute is retroactive, we begin with the presumption against retroactive legislation.[10] This presumption is "deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."[11] The presumption is reflected in AS 01.10.090, which states: "No statute is retrospective unless expressly declared therein." But AS 01.10.090's express declaration requirement is tempered by a companion statute, AS 01.10.020, which provides that "[t]he provisions of AS . . . 01.10.090 shall be observed in the construction of the laws of the state unless the construction would be inconsistent with the manifest intent of the legislature." Accordingly, the Alaska Supreme Court has recognized that despite AS 01.10.090, an express declaration is not necessary to overcome the presumption against retroactivity when either the legislative history or the necessary operation of a statute demonstrate that the legislature intended for the statute to apply retroactively.[12]

---

[8] SLA 1995, ch. 79, § 41.

[9] *Stoneking*, 39 P.3d at 523.

[10] *See State v. Doe A*, 297 P.3d 885, 888-89 (Alaska 2013).

[11] *Id.* at 889 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)).

[12] *See, e.g.*, *Louie v. BP Exploration (Alaska), Inc.*, 327 P.3d 204, 207 (Alaska 2014) (examining whether there was any "indication that the legislation was intended to have retroactive application in either the statutory language or the legislative history"); *Caspersen v. Alaska Workers' Comp. Bd.*, 786 P.2d 914, 915 (Alaska 1990) (holding that "[n]either the express terms of AS 23.30.225, nor necessary implication, require that the statute be given a retrospective effect"); *State, Alcoholic Beverage Control Bd. v. Odom*

Here, the legislative history strongly suggests that the legislature did not intend the 2016 amendment to AS 33.16.220(i) to be retroactive. In 2017, the legislature enacted legislation clarifying that the statutory change was not retroactive. The new legislation stated, in relevant part, "Nothing in the provisions of AS 33.16.220(i) may be construed as invalidating a decision of the Board of Parole, issued before January 1, 2017, that extended the period of supervision beyond the maximum release date on the original sentence."[13]

However, although a subsequent legislature's declaration of a prior legislature's intent is "a factor that the courts should consider when determining the meaning and effect of the pre-existing statute," it is not dispositive.[14] We therefore turn to the 2016 statutory language to determine if there is anything in that language that suggests that the legislature intended the statutory amendment to be retroactive.

In 2016, AS 33.16.220(i) was amended to read:

> If, after the final revocation hearing, the board finds that the parolee has violated a condition of parole imposed under AS 33.16.150(a), (b), or (f), or a law or ordinance, the board may revoke all or a portion of the remaining period of parole subject to the limits set out in AS 33.16.215, or change any condition of parole. . . . The board may not extend the period of parole beyond the maximum release date calculated by the department on the parolee's original sentence plus any time that has been tolled as described in this section.[15]

---

*Corp.*, 671 P.2d 375, 377 n.4 (Alaska 1983) (noting that AS 01.10.020 modifies AS 01.10.090's express declaration requirement).

[13] SLA 2017, ch. 13, § 30.

[14] *Mosquito v. State*, 504 P.3d 918, 922 (Alaska App. 2022) (quotation marks and citation omitted).

[15] SLA 2016, ch. 36, § 148.

Notably, the first sentence of the statutory provision is phrased in the conditional, present tense ("If, . . . the board may"), and the last sentence is phrased as a mandatory, present-tense command or prohibition ("The board may not . . ."). Courts have recognized that clear language is needed to overcome the presumption against retroactivity, and that language phrased in the present tense is generally insufficient to do so.[16] Indeed, courts have recognized that a statute's use of the present tense is a strong indicator of its *prospective* orientation.[17] As one court has noted, "If anything, use of the present tense implies an intent that the statute apply to the present, as of its effective date, and continuing forward."[18]

Certainly, it would have been possible for the legislature to use prospectively oriented language in a manner that would affect the continued service of parole-revocation sentences imposed prior to AS 33.16.220(i)'s amendment. Examples of this can be seen in the case law from other jurisdictions.[19] But the legislature instead used language directed only at the act of extending parole supervision after the statute's effective date. And the legislature did not attempt to retroactively vacate parole board adjudicative decisions that were rendered prior to the statute's effective date.

Moreover, the supreme court has recognized that, as a general matter, statutes should be construed in a way that does not upset settled expectations and

---

[16] *See Waddoups v. Noorda*, 321 P.3d 1108, 1112 (Utah 2013).

[17] *See Carr v. United States*, 560 U.S. 438, 447-49 (2010); *State v. McClendon*, 935 P.2d 1334, 1339 (Wash. 1997).

[18] *Waddoups*, 321 P.3d at 1112.

[19] *E.g.*, *People ex rel. Griffin v. Baxter*, 173 N.Y.S.3d 87, 90 (App. Div. 2022) (discussing statute providing for recalculation of earned time credits for "all persons serving a sentence subject to community supervision at the time this legislation becomes law retroactive to the initial date such person began his or her earliest period of community supervision").

retroactively change legal statuses.[20] Many prohibitions and punishments turn on a person's status as a parolee, and if we interpret AS 33.16.220(i) as Middleton proposes, it would have the effect of retroactively invalidating many criminal, civil, and agency actions that were predicated on a person's status as a parolee. The 2016 legislature's silence in Senate Bill 91 as to whether AS 33.16.220(i) was meant to retroactively invalidate parole board decisions supports that it was not meant to be applied in that fashion.

Finally, grouping the 2016 amendments to AS 33.16.220(i) with an applicability clause that applies to "parole granted before, on, or after" the statute's effective date ensures that parolees are not excluded from the statute's coverage simply because they were placed on parole before the statute's effective date. In other words, it ensures that all persons who are on parole after the statute's effective date enjoy the benefits of its protections. And as noted previously, the use of the phrase "before, on, or after" in an applicability clause does not necessarily mean that a statute is fully retroactive — *i.e.*, it does not invariably constitute an express declaration of retroactivity within the meaning of AS 01.10.090, and it does not do so in this case.[21]

Taking all of the above-noted considerations into account, we conclude that the 2016 amendment to AS 33.16.220(i) was not fully retroactive (*i.e.*, it did not invalidate extensions of parole supervision ordered before the amendment's

---

[20]  *See, e.g.*, *Doe v. State, Dept. of Pub. Safety*, 92 P.3d 398, 409 (Alaska 2004).

[21]  A better example of an express declaration of retroactivity can be seen in *Pfeifer v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 260 P.3d 1072, 1080, 1080 n.32 (Alaska 2011) (citing the applicability clause stating that the statutory provision "is retroactive to October 1, 2006"). But in order to constitute an express declaration of retroactivity within the meaning of AS 01.10.090, it is not necessary that the terms retroactive or retrospective be used; the requisite clarity can be achieved with other language. But it is unnecessary for us here to limn out the dividing line between an express declaration under AS 01.10.090 versus discerning retroactivity from a statute's history or operation pursuant to AS 01.10.020.

January 1, 2017 effective date). We therefore agree with the superior court that DOC's extension of Middleton's maximum release date in December 2015 was not invalidated by the 2016 statutory changes to AS 33.16.220(i). Therefore, the superior court did not err when it dismissed Middleton's post-conviction relief application.[22]

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[22] Middleton raises two substantive claims on appeal regarding the interpretation of the 2016 amendment to AS 33.16.220(i). First, he claims that this amendment prevented the parole board from requiring him to serve any portion of his remaining good-time credits as a parole revocation sentence that would result in incarceration after his original maximum release date. Second, he claims that even if the parole board could revoke his parole and cause him to be incarcerated after his original maximum release date, that this would still violate AS 33.16.220(i) because DOC would award him good-time credits on the parole revocation sentence, resulting in an additional period of parole supervision after his original maximum release date. In light of our holding that the 2016 amendment is not retroactive, these claims are moot. Furthermore, these claims are foreclosed by this Court's recent opinion in *Roller v. State*, 539 P.3d 518, 527-28 & n.41 (Alaska App. 2023).

We also note that it is not clear whether Middleton continues to challenge the September 2017 revocation on appeal. On remand, the superior court found that any issues with respect to the 2017 revocation were moot because the 711-day parole revocation only extended Middleton's incarceration until June 13, 2019, well within the December 29, 2019, maximum release date calculated by DOC after the December 2015 parole revocation action. We agree with this conclusion.